LAND, J.
This is a proceeding to remove from the custody of the defendant, Mrs. Anna Dartez, her three children, who are under the age of 12 years, and to place them in the custody and under the care of relators, the father and the grandmother of these minors.
This application is made under section 1 of Act 79 of 1894, which makes it the duty of a judge to remove a child from the custody of a parent or parents, when the physical or moral welfare of such child—
“is seriously in danger by the neglect, or abuse, or the vicious, or immoral habits, or associations, of its parents, or parent, * * * or that the physical or moral welfare of any such child is seriously endangered by the inability, refusal or neglect of such parents, or parent, * * * to properly care for such child.”
On May 15, 1917, defendant, Mrs. Anna Dartez, obtained a divorce from relator, Delicien Dartez, on the ground' of adultery, and the judgment rendered in her favor awarded to her the custody of these children. At the date of the institution of this proceeding, the minors, Manuel and Walton Dartez, were with their mother, and Judith Dartez was with the relators, attending school at the Convent in Abbeville. The present application is based upon the charge that the physical and moral welfare of said children are seriously endangered by the neglect of the defendant, Mrs. Anna Dartez, to properly care for said children, and by the immoral habits and associates of said defendant.
Defendant denies these charges in her answer.
When a proper case is presented by the evidence, the act in question declares that:
“It shall be the duty of such judge to cause such child to be removed from the custody of such,parents or parent, tutor or custodian, and provided with a home or such place for safekeeping and provision of such child as may be available and in his best judgment.” Section 1, Act 79 of 1894.
[1] The primary object of the statute is the protection of the child. The public policy of the state is to place the welfare of the child above any right of parental custody, when such welfare becomes endangered, morally or physically, by the misconduct of sthe parent, or by his or her neglect of duty to the child.
We do not attach any importance to the fact that the children of defendant were found upon the public roads at night and near a dipping vat on one or two occasions. Defendant had provided for their protection by leaving them in the custody of a party, who left them, and they had been chastised for going to the dipping vat on a former occasion.
This charge of neglect as to their physical welfare does not seem to be borne out by the evidence.
In addition to this charge, however, the petition charges the defendant with notorious intimacy with Eloi Hebert, a married man. It alleges his open visits day and night *725 to defendant’s house; his spending the night at her house; his being kissed by defendant on his "arriving at her house; the protest óf the lawful wife of Eloi Hebert against defendant going out at night in his automobile; and that, due to her conduct, defendant has been forbidden to attend public dances in the neighborhood. The gravamen of this charge is directed against the visits paid by this married man to defendant. The neighbors who are witnesses to these visits declare with few exceptions, that because of the conduct of defendant in receiving such visits, they would not permit their families to go to her house. Defendant was accompanied to dances by Eloi Hebert, and danced with him so much that the proprietor of the dance hall objected. Defendant was operated upon, and Eloi Hebert called at the hospital a number of times to see her. She was warned about her conduct by a friend, and by the protest of the lawful wife of Eloi Hebert; yet she continued to accept his attentions, in spite of such warnings. Under such circumstances, it is idle to contend that, there was nothing wrong in the relationship of these parties, and that defendant was jus-' tified in receiving attentions from this married man, merely because he was her brother-in-law; especially as the former status existing between them had been changed by the divorce obtained-by the defendant from the relator, Delicien Dartez, the brother-in-law of Eloi Hebert.
[2] It is true that the evidence in this case is circumstantial; yet such evidence cannot be swept away upon the mere assumption that it creates only a bare suspicion and nothing more.
Defendant admits in her' testimony that Eloi Hebert was a regular visitor, and that he came to see her once or twice a week. One of relators’ witnesses testifies that he saw defendant coming out of the room occupied by Eloi Hebert at her house on a certain night. Several of relators’ witnesses swear that on one occasion they saw Eloi Hebert enter defendant’s house at sundown and leave the next morning at sunrise.
The testimony is conflicting in some particulars, it is true. The trial judge, however, who heard the witnesses and passed upon their credibility;* arrived at the conclusion that the welfare of these children of tender age required .their removal from the custody of the defendant. The children were placed by the judgment of the lower court in the custody of the co-relator, Mrs. Ursule Blanehet, their grandmother, who is a widow, and who is amply able to support and educate them properly. We find no good reason why this judgment should be disturbed.
The judgment appealed from is therefore affirmed, at the cost of appellant.