O’NIELL, C. J.
 

 This is a suit for possession of a minor child. The plaintiffs are the mother and stepfather of the child. The defendants are the child’s maternal aunt and the latter’s husband. The child is a girl named Mildred Elizabeth Stratton. She was 10 years old on the 13th' day of this month. The district court rejected the plaintiffs’ demand ; and they have appealed from the judgment.
 

 Mrs. Martin, the plaintiff, was born in De Soto parish, and resided there until she was 17 years of age. Her parents then moved to New Mexico, and she went with them. There she married Clarence E. Stratton, when she was 19 years of age, and went with him to live in Newcastle, Ind. The child, Mildred Elizabeth Stratton, was born in Newcastle on the 13th of March, 1916. Four months later Mr. and Mrs. Stratton went to visit her mother in New Mexico, taking the child with them. After spending a year in New Mexico, they visited at the home of Mrs. Stratton’s sister and the latter’s husband, the defendants in this suit, then residing in Fox, Ark. Thence Mr. arid Mrs. Stratton returned with the child to Newcastle, Ind. Stratton, who was a ne’er-do-well, neglected to support his wife and child, and virtually abandoned them in Newcastle, when the child was only 2 years old. Mrs. Stratton went out and found employment in a home where she and the child were allowed to stay; but, being unable properly to support herself and the child, she appealed to her sister, Mrs. Talbot, and, at the latter’s invitation, brought the child to the Talbot home in Fox, Árk. Mrs. Stratton found employment as a telephone operator in Heber Springs, Ark.; and there she sued for and obtained a divorce. The decree of divorce gave her also the guardianship of her child, who was then about 2 years of age, and was living with Mr. and Mrs. Talbot. A few months later, the two sisters, now plaintiff and defendant, left Arkansas together; Mrs. Stratton going to visit her mother, living then in Florence, Ala., and Mrs. Talbot going to her husband, who was working temporarily in a shipyard at Brunswick, Ga. They took the child with them, to be in their mother’s care while Mrs. Talbot would be in Brunswick. They traveled together as far as Florence, where the mother and child stopped, and Mrs. Talbot went on to Brunswick. At Florence, the plaintiff found employment as a maid in the office of three physicians. She remained in Florence six or seven months, the child being cared for by plaintiff’s mother. Plaintiff then went to Memphis, Tenn., where she found employment in a wholesale millinery establishment. Before leaving Florence, she wired Mrs. Talbot to come and take charge of the child. Mrs. Talbot, who was then visiting in Trenton, La., where she and her husband owned property and where his relations lived, went immediately to Florence, in response to her sister’s call, and took the child to the Talbot home in Fox, Ark. The child has remained with Mrs. Talbot ever since.
 

 The plaintiff, while employed in the millinery establishment in Memphis, went several times to see her child at the Talbot home in Arkansas. Her wages were too scant to allow her to contribute to the child’s support, but she'sent her articles of clothing and playthings, and in that way showed her affection for the child as liberally as her means allowed.
 

 While employed in Memphis, the plaintiff met Charles F. Martin; and he courted her and proposed to marry her. During one of her visits in Arkansas, he went there and married her. That was nearly a year after she had left her child with her sister, at their mother’s home, in Florence, Ala.
 

 Mr. and Mrs. Martin returned to Memphis,
 
 *195
 
 where he was employed as an automobile mechanic. They remáined in Memphis nearly a year, during which time Mrs. Martin went diice to see' her child at the Talbot home in Arkansas. Then the Martins moved from Memphis to Salt Lake City,' Utah, where they reside now, and are comparatively prosperous.
 

 Meantime the Talbots moved from Eox, Ark., to Cedar Grove, La., where they resided only a short time and then moved to De Soto parish, where they reside now. While they were living in Cedar Grove, Mrs. Martin and her younger sister, who lives with her, came from Salt Lake City to visit the Talbots. Mrs. Martin tried to persuade Mrs. Talbot to return the child to her, and, failing in that, she and the younger sister tried to take the child forcibly and carry her away, but she created such a disturbance that Mrs. Martin and the younger sister were arrested and prosecuted in the mayor’s court and convicted for assault and battery and for disturbing the peace. Mrs. Martin was persuaded to return to Salt Lake City and wait until she could better afford to sue for possession of the child. She had been trying in vain to persuade the Talbots to give up the child ever since she had married Martin, who was also anxious for her to have the child.
 

 The Talbots moved from Cedar Grove to De Soto parish, and the Martins came from Salt Lake City and filed this suit. It "is a pitiful case, no matter how it should be decided. The child is very happy with the Talbots, believes that they are her parents, and loves them dearly. She believes that Mrs. Martin is her aunt, has no affection for her, and rebéls against going to live with her. The Talbots are an honorable, highly respected couple. He is a farmer, owning the land that he cultivates and other lands, and is fairly prosperous. Having no children of their own, the Talbots are intensely devoted to this child. They undertook to adopt her by legal proceedings, and obtained a decree to that effect; but the proceedings were ex parté, without notice' to the child’s mother, and it is conceded therefore that the decree has no legal effect. The child has been Well "cared for, and is highly intelligent, of good manners, and precocious. She had passed her examinations in the fifth grade and was about to enter the sixth grade in the public school, at the time this suit was tried, when she was not far above 9 years of age.
 

 The record leaves no doubt that Mrs. Martin, with all of her trials and hardships, has led an honorable life. She did not abandon her child willfully, but gave her into her sister’s care for the good of the child, and with the intention and hope of bettering her own condition so that she could reclaim and support the child. She is now prepared to do that. Her husband is of good character, and is able and willing to provide for her and the child. He is an expert automobile mechanic, and is safely established in a profitable business of his own.
 

 We have given a detailed account of Mrs. Martin’s movements from the time of her girlhood to the trial of this case, because the only question is whether she is worthy of her parental authority and able to take proper care of her child. As far as the record shows, she has not forfeited her parental authority and is very worthy of it. She is, by nature and as a matter of right, the tutrix of the child. Rev. Civ. Code, arts. 216, 248, and 250. The courts are not authorized to interfere with a parent’s authority over his or her child except in cases where the physical or moral welfare of the child is endangered by neglect or abuse or vicious or immoral habits on the part of the parent. " Act 79 of 1894, p._ 91. The child’s preference to live with some one else cannot prevail over the parent’s authority to compel the child to live with him or her. Prieto v. St. Alphonsus Convent, 27 So. 153, 52 La. Ann. 631, 47 L. R. A. 656;
 
 *197
 
 State ex rel. Sevier v. Sevier, 74 So. 630, 141 La. 60; State ex rel. Harper v. Tebault, 86 So. 320, 147 La. 8S9; State ex rel. Wilson v. Pierre, 99 So. 421, 155 La. 510.
 

 The learned counsel for the appellees cite and rely upon the rulings in State ex rel. Lasserre v. Michel, 30 So. 122, 105 La. 742, 54 L. R. A. 927, State ex rel. Bush v. Trahan, 51 So. 216, 125 La. 312, Ex parte Ryan, 52 So. 573, 126 La. 449, and State ex rel. Dartez v. Dartez, 98 So. 164, 154 La. 722 ; but we do not find any oí these decisions to be in conflict with those which we have cited. In State ex rel. Lasserre v. Michel, the ruling was merely that the marital relation did not prevent the husband’s suing his wife for possession of their child, on allegations of unworthiness on the defendant’s part. State ex rél. Bush v. Trahan was a contest between the mother and father for possession of- the child,-and the court held that, by his conduct, the father had forfeited his superior authority to have possession of the child. In Ex parte Ryan, the father was unworthy of his tutorship because he had neglected to support the child, had been prosecuted and convicted of the offense of nonsupport, and sentenced to imprisonment for failure to pay the alimony that he was condemned to pay. In State ex rel. Dartez v. Dartez, the children wrere taken from the mother and given over to the father and his mother, under the provisions of Act 79 of 1894, because of improper conduct on the defendant’s part.
 

 In the decisions which we have cited in support of the authority of the parent, the children’s preference to live with those to whom they had become attached by long association and kind treatment was said to be an important consideration, but the children’s preference in that respect has never prevailed over the authority of worthy and capable parents.
 

 The separation of the child from her foster parents in this case is going to be very sorrowful to them. In awarding the child to the mother, we trust that she will show her womanly compassion by softening the conditions, as she alone can. The child’s'disappointment will soon he forgotten. Nature will see to that.
 

 The judgment appealed from is annulled; and it is ordered, adjudged and decreed that the plaintiff take charge and possession of her child, Mildred Elizabeth Stratton, and that the defendants pay the costs of this suit: