(124 So. 129)

No. 29754.

### DAVIS v. WILLIS et al.

July 8, 1929. Rehearing Denied Oct. 8, 1929.

C. W. Flowers, of Jena, and George T. McSween, of Shreveport, for appellant.

Murff & Perkins, of Shreveport, for appellees.

OVERTON, J. Plaintiff is the father of Sybil Davis, the issue of his marriage with Delia Wilbanks, now deceased. He brought this suit to be restored to the possession of his child, who is now approximately 8 years of age, and who is living at present with her aunt, Mrs. Mary Wilbanks Willis, and her uncle by marriage, Jack Willis, the defendants in this case. The defense, based upon specific grounds alleged, is that it is to the best interests of the child that she remain in the custody of defendants.

Plaintiff was married to Miss Delia Wilbanks, at Pollock, La., on September 1, 1915. The couple eventually found their way to Shreveport, where they lived together until they separated in 1927. Following the separation, plaintiff's wife brought suit against him for divorce, on the ground of adultery, and, in the alternative, for a separation from bed and board, on the ground of cruel treatment. The suit resulted in judgment rendered, in default of the present plaintiff's appearance, in favor of his wife, granting her an absolute divorce, and awarding her the care and custody of Sybil. After the divorce, Mrs. Davis and her daughter lived with the former's parents until Mrs. Davis died a few months later.

When Mrs. Davis was doubtful as to whether she would survive her illness, she expressed the wish that, in the event of her death, her sister, Mrs. Willis, and her sister's husband, Jack Willis, would take and rear Sybil. Since her mother's death, Sybil has been living with her aunt and uncle in Shreveport, where she seems to be thoroughly content and averse to leaving for the purpose of living with her father.

Willis and his wife own their home. They

are both conceded to be of good character, and are willing to care for Sybil, educate her, and rear her as they would their own child. Willis was a school teacher, but left that employment for a position in the government service, as letter carrier, a position that he has held for over five years. His salary is $175 a month.

Plaintiff's calling is that of a barber. He owns no barber shop, but at the time this suit was tried was, and had been for some months, in the employ of his brother, John Davis, who owned a barber shop at Mangham, La. He makes approximately $185 a month. He owns no home, is unmarried, and boards at his brother's. Should the child be awarded to him, he proposes to board the child at his brother's. Davis and his wife are willing to care for the child while she is at their home. Both are of good character. During his married life plaintiff drank periodically to excess. On one occasion, during the separation, while drunk, he wished to see his child, and went to see her in that condition, staggering from the automobile to the front door. Plaintiff, during the trial, said that he had quit drinking, but conceded on cross-examination that he had drunk some, four or five months before, which apparently was after he had formed his resolution to quit.

After the divorce, but before his wife's death, plaintiff made no effort to contribute to the support of his daughter, save upon one occasion, when he sent indirectly on Christmas Day a box containing clothes and other things. After his wife's death he made no effort to contribute anything to the child's maintenance. His reason for not contributing apparently was that contributions from him would not have been received. It does not appear, however, that they would not have been accepted, though there was pos-

sibly some reason for plaintiff to think that they would not have been received, after the divorce, during the period when the child and the mother were living at the home of the latter's father, during which period the father advised plaintiff that his presence was not wanted there. However, it does not appear that the box sent, which was at a time when the child was living at her grandfather's, was ever returned, if it was received.

While the court dislikes to refuse to restore to a father the custody of his child, for the father has a natural right to the child's custody, nevertheless the state has an interest in the child, which goes beyond the mere right and authority of the father. In all cases the welfare and happiness of the child must be considered by the court, and, when such welfare is likely to become endangered by the restoration of the child to the father, it is the duty of the court to refuse to restore the custody of the child. Ex parte Ryan, 126 La. 449, 52 So. 573; State ex rel. Bradley v. Lewis, 145 La. 23, 81 So. 742; State ex rel. Dartez v. Dartez, 154 La. 722, 98 So. 164; State ex rel. Peter v. Stanga, 161 La. 978, 109 So. 783.

Plaintiff is single. The child is of tender years and needs some one who will bestow upon her the care and attention of a mother. Probably the child would receive such attention so long as she remained at Mr. and Mrs. Davis' home, but Mr. and Mrs. Davis are not suing for the custody of plaintiff's daughter. Plaintiff is addicted to periodical drinking which at any time may cause him to lose his present position and endanger the holding of any other position in his calling he might get. In the event plaintiff should lose his present position, he would naturally, on obtaining employment in another town, which he would have to do, as there is only one barber shop in his present location, take

his daughter with him, and that would end, were plaintiff given the custody of his daughter, the care of Mrs. Davis over her. During the twelve years of plaintiff's married life, he lived in six different towns. The trial court, in awarding the custody of the child to Willis and his wife, was doubtless influenced by the likelihood, if the custody of the child were awarded to plaintiff, of the child's being taken from place to place, or from boarding house to boarding house. The views of the trial court, in such cases, upon the facts surrounding them, are entitled to much weight. State ex rel. Johnson v. Johnson, 149 La. 89, 88 So. 698.

The judgment is affirmed.

O'NIELL, C. J., takes no part.