ODOM, Justice.
 

 This is a habeas corpus proceeding, brought by plaintiff to obtain custody of her son, Wayne Parker, who was three years and eight months old at the time the suit was filed. The proceeding was brought on August 8, 1941, against plaintiff’s former husband, father of the child, who had him in custody in Vernon Parish.
 

 There was judgment in favor of plaintiff and against defendant, decreeing that plaintiff was entitled to the custody of the child and ordering defendant to deliver him forthwith to the plaintiff, and granting to the father the right to visit his son at reasonable times. The defendant appealed.
 

 Plaintiff and defendant were married'in Vernon Parish on May 20, 1931, and lived
 
 *194
 
 there until 1937, when they moved to Port Arthur, Texas. The child was born there on January 11, 1938. In May, 1939, when the child was one year and four months old, the defendant abandoned his wife and came back to Vernon Parish, this state. He brought the child with him and carried him to the home of his father and mother, where the child has remained ever since. The grandmother so testified, and her testimony is not disputed.
 

 On July 10, 1939, plaintiff filed suit for divorce in Jefferson County, Texas, against her husband, defendant in this proceeding, and on September 8, following, judgment was rendered in her favor, granting to her an absolute divorce and awarding her the care and custody of the child.
 

 At the time plaintiff filed her suit for divorce in Texas and at the time the judgment was rendered, the child was not in that state but was in this state, where the father had brought him. Because that is true, counsel for defendant in this habeas corpus proceeding suggests that the judgment rendered in Texas is null and ineffective in so far as it awarded the custody of the child to the mother, for the reason that the Texas court had no jurisdiction over the child.
 

 We find it unnecessary to discuss or pass upon that point for the reason that plaintiff, the mother, does not ground her suit to obtain the custody of her child solely upon that judgment. While she alleged that the Texas court had decreed that she should have the custody of the child, she further alleged, and this is her main contention, that the child’s father is not “a proper person for the custody, care, control and training of the child”; that he has no home and' is “residing in a tent in Peterson’s Trailer Camp, in Vernon Parish”; that, when he took the child from her in Texas and brought him to this state, he “placed it in the care and custody of its paternal grand-parents”.
 

 She further alleged that she is now married to W. N. Mims, and that her husband is cooperating with her in her efforts to get custody of the child. The record shows that at the trial of the case the main issue stressed was the welfare of the child, and that the court was called upon to decide whether, in view of existing conditions and circumstances, the safety and welfare of the child would be best subserved by taking him from his father and placing him in the care and custody of his mother.
 

 At the time the suit was filed and at the time the case was tried, the father of the child was working at a camp and was living in a tent. He testified that he was living there only temporarily. The child was not with defendant at that time but was with his paternal grandparents, who lived about 22 miles away. The father of the child did not say, and there is nothing in the record to show, that he has a home of his own or that he had had one at any time since he brought the child from Texas to Vernon Parish,, some two and one-half years before this suit was filed. Just where he had been living during that time or what he had been doing is not disclosed by the record. The facts are that, when he brought the child from Texas, he immediately carried him to the home of his father and mother,
 
 *196
 
 where the child has been ever since. The grandmother testified that she had had custody of the child during that entire time, and that the child had never been away from her except on one or two occasions, when she permitted him to visit his father at the camp for two or three days. Obviously, the father is in no position to take care of the child, nor does it appear that he will be in the future.' The testimony shows that he remarried about the time this suit was filed and that his wife was living with him in the tent. But he did not say, and there is nothing to indicate, that he is preparing to establish a home of his own or that he'hopes to do so. So far as we know, he expects to leave the child with his grandmother. .
 

 Plaintiff, the mother of the child, is married, and her present husband is cooperating with her in her efforts to obtain the custody of her son. He attended the trial with her and testified that he was anxious for her to get the child and that he expected to help her take care of, and rear, him. The testimony shows that plaintiff and her husband are people of good character, own their own home, and are amply able to take care of the child. '
 

 The case was not argued orally before the court, but was submitted on briefs. Counsel for the father suggests that the mother of the child had abandoned him and had never taken any interest in his welfare up to the time she brought this proceeding for his custody. This argument is not supported by the record. When the father of the child abandoned the mother in Texas, she was left destitute and lived for some time with her sister. She was energetic, and with the assistance of some of her relatives she was able to take and complete a course in cosmetology and soon became self-supporting.. In the meantime, she made several trips from Port Arthur to Vernon Parish to see the child. On each visit she found that the boy was with his paternal grandparents. On these visits the mother requested that she be permitted to take her son with her to spend the night, but her requests were refused by the grandmother, who testified that the child would be disturbed and agitated if removed from her presence. There is, therefore, nothing to show or even to indicate that the mother ever at any time lost interest in her child or that she ever abandoned the hope of ultimately obtaining his care and custody.
 

 The testimony shows that the father of the child had been married five times, the last marriage taking place about the time this proceeding was filed. He Was asked whether he had not been married five times and replied, “More or less, yes, sir.” He was asked what became of the other four women to whom he had been married, whether he left them in the same way he left the mother of this child. He refused to answer the question, saying, “I don’t think that that has one thing to do with this case.” Counsel for the father objected to further testimony along this line, and his objection was sustained by the court. We think the testimony sought to be introduced was relevant, in view of the fact that the welfare of the child is involved. The defendant apparently was willing for
 
 *198
 
 the court to infer that he had abandoned his other wives as he had abandoned the mother of this child. All of this indicates, to say the least, that he is not a man of stable character and disposition, and that with slight provocation or no provocation at all he is disposed to neglect those family ties and 'duties so necessary to the care, custody, and welfare of a minor child.
 

 The judge ordered that the child be produced in court at the trial. He was brought into court by his grandmother, not by his father. The judge had the witnesses before him, and no doubt he knew them, or some of them, personally. After seeing and hearing them, he reached the conclusion that the welfare of the child would be better served by placing him in the care and custody of his mother than by leaving him where he was.
 

 This is a controversy between the mother and the father of a child of tender years as to which of the two is entitled to his care and custody. In cases of this kind where the welfare of the child is involved, the opinion of the trial judge is entitled to great weight. State ex rel. Peter v. Stanga et ux., 161 La. 978, 109 So. 783; Davis v. Willis et al., 169 La. 13, 124 So. 129; State ex rel. Stockstill v. Spiers et ux., 170 La. 454, 128 So. 275; State ex rel. Perdue v. Carkuff et al., 182 La. 920, 162 So. 729; State ex rel. Castillion v. Jeunesse, 185 La. 845, 171 So. 51.
 

 A reading of the record has convinced us that the judge made no mistake in this ‘case.
 

 The judgment is affirmed, costs to be paid by the defendant.