KENNON, Justice.
 

 This is a contest between the father and maternal grandparents for the custody of a boy born on March 8, 1941 whose mother died on December 15, 1944, while the father, (relator herein) was serving with the U. S. Navy in the Pacific.
 

 Relator left his wife and four months old son in Natchitoches, La., in July 1941, to seek employment in Colorado. The family was reunited again at the end of 1941 and during the early part of 1942, at relator’s mother’s home in Pine Bluff, Arkansas.
 

 Later in 1942, the parties discussed a divorce but took no action. The child and its mother went to live with the maternal grandparents in Bienville Parish, La. Support by relator was absent or intermittent until after April 1943, when he entered the U. S. Navy. His interest in his family at that time was evidenced by a $10,000 insurance policy in which his wife was named as beneficiary and by monthly allotments, which amounted to $105 a month at the time of his -wife’s death in December 1944.
 

 Upon learning of his wife’s death, relator, who was then on duty in the remote Pacific area, went before his commanding officer and changed the $105 monthly allotments to his own mother, naming her as “mother and guardian of child”. Plowever, there was no transfer of custody and the maternal grandparents continued to keep and care for the child.
 

 In September 1945, relator returned to the United States. Pie was discharged from the Navy on October 14, 1945, and was remarried on the same day. He returned to Bienville Parish and upon being refused custody ’ of the child by the maternal grandparents, filed on October 26, 1946, this application for a writ of habeas corpus, together with a prayer for permanent care and custody of the child.
 

 Respondents in their answer asked, in the event custody of the child be granted to relator, that they be reimbursed at the rate of $100 per month for his care and keeping from the time the mother became ill in January 1943.
 

 The district court rendered judgment vacating the writ of habeas corpus, without
 
 *1008
 
 passing on the question of permanent care and custody, or the claim of respondents for reimbursement. Relator appealed to this Court, praying that the writ be made absolute and that he be granted permanent care and custody of the child.
 

 Were this a case in which the father had voluntarily surrendered the child to the grandparents and permitted, through his neglect, that foster parent relationship to continue over a period, of years, the court would not give active aid to him in reclaiming the custody of the surrendered child, if convinced that the child is being and will be properly cared for by the foster parents and that the child is content to stay. State ex rel. Peter v. Stanga, et ux., 161 La. 978, 109 So. 783 and State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740. However, we have concluded that the fact that the child remained in possession of the maternal grandparents after his mother’s death and up until the time of the filing of the application for the writ can fairly be attributed to relator’s Naval Service and respondents’ desire to keep the child rather than to the father’s neglect or lack of interest, and his right to possession of the child at the time of his return from overseas was the same as it would have been had he, at the time of the mother’s death, made claim for its control and custody. The record shows no intention on his part to abandon the child or leave it to the care of its maternal grandparents. On the contrary, the record discloses that he endeavored to gain possession of his child by the naming of his own mother as guardian and. making provision for the $105 monthly installments to be paid to her for its support.
 

 The general rule has been well-established that if the surviving parent is physically and mentally able and morally fit to take care of a child, no other person,, even though better able to care for it, can question the right of the parent to the custody of the child. This right will be upheld unless it is shown that the father is-disqualified by unfitness or has, through indifference or neglect, permitted a child of tender years to be reared by other persons who have become in fact more like parents, than the father himself.
 

 This rule is well-stated by Chief Justice O’Niell in the case of State ex rel. Landry v. Robin, 193 La. 789, 192 So. 349 and quoted by Justice Rogers in the case of State ex rel. Conerly v. Sonier, 209 La. 138, 24 So.2d 290, 291, that:
 

 “The right to the care and custody of a. minor child whose mother or father is dead is granted by law to the surviving parent unless it is proved that he or she is disqualified by unfitness or inability to care for the child.”
 

 If the parent is unfit, the rule of State ex rel. Stockstill v. Spiers et ux., 170 La. 454, 128 So. 275, applies. In that case, this Court declined to take a two year old girl from the maternal grandparents and give it to the father when the evidence showed that he was a young man of unsettled nature, and had no experience in caring for
 
 *1010
 
 and rearing children, with no home of his own and no matrimonial domicile other than at his parents’ home or the home of his wife’s parents.
 

 The fact that the wartime absence of the father at the time of the mother’s death created a condition which has caused other people to be firmly attached to the -child cannot justify the permanent separation of father and son, if the court finds that the father is now in a position to provide the child with a comfortable home and ■proper care. It is noted that the district court judgment was silent on the question of permanent care and custody. It is likely the learned district judge who tried the case below thought that the decision of permanent care could well wait until relator had proven and demonstrated his intention of setting up a home proper for the upbringing of the young child, whose custody was at issue.
 

 At the time of filing of the suit (October 1945) relator had only been married a few weeks and had no domicile or household other than that of his mother at Pine Bluff, Ark. Nearly fifteen months have now passed. There is evidence in the record that the relator is of good moral character and has a trade. If the court on further hearing should find that he has established a home in which the child could receive proper care and treatment and that the habits and character of his second wife are such as to indicate that she is a fit person to assist in the control and rearing of the child, then the child should be awarded to the father.
 

 Under these circumstances, we have concluded to follow the same action as taken after rehearing in State ex rel. Landry v. Robin, 193 La. 789, 192 So. 349, and to remand this case to the district court for the introduction of evidence of the father’s ability or inability to care for his child, and upon the subject of the environment in which the child will live with its father and stepmother. In that connection we instruct the judge of the district court, who will handle this case, to appoint a suitable person — preferably a woman field worker from a recognized welfare agency — to visit in the home of the father of the child, ascertain the condition under which home and community the child would liye if placed there, and to report under oath to the court all of the facts found that may be relevant to the question whether the child shall be left where he is, or shall be given into the care of his father. After hearing the report and such additional evidence as may be available and relevant as to conditions in both homes, the judge shall render such judgment as the facts will justify.
 

 Should the district court find, upon further hearing that the home of the father is a suitable one for the rearing of his son, it will necessitate the separation of the boy from his foster parents and this necessarily is going to be sorrowful to them. We trust that the same spirit of kindness and love which prompted the father to claim
 
 *1012
 
 his son will be used to soften the conditions incident to the transfer and cause him to assist in the maintenance of the mutual feeling of love between the boy and his grandparents.
 

 This case is ordered remanded to the district' court for further proceedings consistent with‘the instructions which we have given, and for that purpose the judgment appealed from is set aside. In the meantime, and pending the final decision of the case, the father is not deprived of his right* to visit the child. Costs of both courts to be borne equally by relator and respondents.