BOND, Justice
 

 (dissenting).
 

 Under the express provisions of the Revised Civil Code and under the jurisprudence of this state, a parent has a superior right to the custody and control of his or her child over third persons; and upon the death of the father the mother is rightfully entitled to the custody of a minor child, unless strong reasons are shown that she should be deprived of her natural and legal rights. R.C.C. Arts. 216 and 250; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411, and Higginbotham v. Lofton, 183 La. 489, 164 So. 255. The jurisprudence is also clear that courts are not authorized to interfere with a parent’s right to his or her child except in cases where the physical or moral welfare of the child is endangered by neglect or abuse, or immoral habits on the part of the parent. State ex rel. Perdue v. Carkuff et al., 182 La. 920, 162 So. 729;
 
 *327
 
 State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98.
 

 The respondents herein base their claim and a denial of the relatrix’ rights to the care and custody of her minor child on the ground that the relatrix has neglected and abandoned her child and that the welfare of the minor will be best served by allowing him to remain with them.
 

 In the majority opinion it is said: “We, like the trial judge, are impressed by the mother’s apparent lack of interest in the welfare of the child and her indifference to him over a long period of time. * * * ” And the conclusion reached by the majority opinion is that the happiness and welfare of relatrix’ minor son would be best served by leaving him in the care of his grandparents.
 

 Having carefully reviewed the evidence, I am constrained to differ with the above holding, finding nothing in the record or the law applicable to this case which convinces me that the relatrix is riot a suitable person and should not be given the custody and care of her minor son.
 

 It appears that after the relatrix obtained her divorce in 1938, her husband defaulted in the payment of $12.50 per week alimony, and being without any financial means whatsoever, she permitted him to take their son, then a year and a half old, to the home of his parents with whom he then lived and where the child still remains. Relatrix thereafter secured employment and, although testimony was introduced to show that she did not visit her child in the home of the paternal grandparents or have him at her home, it was shown that she did visit him at the home of her parents and at the home of her sister, and that she sent him gifts on holidays and birthdays. (Thus the child was not neglected nor isolated but was included in the mother’s affections and those of his mother’s family.) Relatrix remarried in December 1939. It is shown that her second husband was transferred from state to state in his employment, and, because of this, in addition to the fact that for several years — 1939-1944—his salary was small, it would not have been conducive to the interest and welfare of the child to have been taken from the home of his father during that time. It was only after relatrix and her husband established their home in Tyler, Texas, in 1944, where he is manager of a shoe store and earns a salary and commission of about $320.00 per month, that relatrix for the first time since the father took the child, was in a position to care for the child. The father of'the child then being in the Military Service, relatrix refrained from making demand on the grandparents for the custody of her minor son! However, in January, 1945, upon learning of her former husband’s death overseas, relatrix immediately instituted suit for the custody of her son.
 

 The principal question presented is whether the relatrix, who has a superior right to the custody and possession of her child, is,
 
 *329
 
 for any of the reasons advanced by the defendants, unworthy of the tutorship and possession of her child, or is incapable of taking care of him.
 

 The trial judge held that the mother had neglected and abandoned the child and that there was a lack of “mother affection in her attitude toward the minor as the court is able to understand mother love.” Unquestionably, courts have some discretion in dealing with the custody of minor children, but that discretion has to be based on solid and substantial grounds.
 

 In State ex rel. Kearney v. Steel et al., 121 La. 215, 46 So. 215, 16 L.R.A.,N.S., 1004, it was held: “A widow, who by reason of her necessitous circumstances at the time places her little son in the care and custody of its paternal grandmother, and leaves him with her for several years, does not thereby forfeit her right to reclaim her child when she comes later to better fortune. Her act in so leaving the child did not imply a promise on her part never to retake him. * * * ”
 

 The objections urged by the grandparents to the surrender of the child to his mother are such as would naturally arise from the situation of taking a child from them who has been greatly endeared to them. It has been established that the child is well cared for and secure in the home of his grandparents and is contented there. On the other hand, the writer of this dissenting opinion is satisfied that there is nothing in the record to indicate that relatrix’ minor son will not attain that position and soon be well satisfied and happy if placed in the care and custody of relatrix, his mother. As is shown by the record, relatrix and her present husband are willing and able to support her minor son. They are respectable people and enjoy a good reputation in the community in which they live.
 

 The main charge is of relatrix’ neglect, indifference and lack of interest in her child’s welfare over a period of several years. I am of the opinion that relatrix did not by leaving her child with its paternal grandparents, after its father had joined the Armed Forces, forfeit her right to his care and custody; nor did this imply a promise on her part never to retake him. I am of the opinion that she permitted the child to be taken from her by the father only after she realized that by being forced to earn her own living she would be unable to personally care for him. She might well have felt that she had to sacrifice her own feelings for the child’s good. While she was not in a position to support him, she was willing to leave him with others better able 'to supply his wants. This fact by no means would exhibit “lack of mother affection” for the child. It appears that relatrix was married at the age of 16 years and at the age of 19 years she was experiencing the disappointments and difficulties of a home wrecked by divorce, and was left entirely without financial means and with an infant a year and a half old to sup
 
 *331
 
 port. Considering all of these facts, I feel justified in stating that relatrix did not wilfully surrender or abandon her child but that she had the intention and hope of bettering her own condition so that she could later reclaim and support him. She is now ready and able to do so and should not be deprived of her son’s custody and control. No evidence was submitted to show that relatrix has led a frivolous and gay life nor has her moral fitness been questioned. In the absence of such showing, there is not sufficient reason why relatrix should not be awarded the custody and control of her minor son.
 

 As for the grandparents, the record shows that relatrix has always been “on good terms” with them, and I believe she would not deprive them of seeing the child, once her authority and rights are recognized. The child’s feelings, if there should be any present disappointment to him, would naturally heal in time.
 

 I cannot agree with the judge of the lower court that his holding does not preclude the mother from claiming the tutorship of the minor or from future actions to regain the custody of her child. Once the care, custody and control of the minor has been placed in the grandparents it can not be taken away from them without just cause.
 

 For these reasons, I respectfully dissent from the holding in the majority opinion.