McCALEB, Justice
(dissenting in part).
I am in accord with the reversal of the decision of the trial judge and the ruling that relator, under the law and the evidence, is entitled to the custody of his daughter. But I think relator should be granted relief on the record as presented here and can see no substantial reason for remanding the case in order to permit the collateral relatives to further inquire into relator’s qualifications to reassume his status as father of the child in the paternal home (see Civil Code, Article 218) which no one doubts he has properly occupied since her birth. The remand serves only to further the injustice which has been visited upon this father by the relatives of his late wife and to withhold from him unjustifiably the present exercise of his legal and natural rights.
The facts, which have been fairly and painstakingly set forth in the main opinion, demonstrate that this not a case in which a father has, following the death of his wife, turned over his child to the wife’s collateral relatives or has impliedly surrendered custody by long silence and inaction, or has committed any act which would lead the court to believe that he did not care for his child. On the contrary, the record shows that this father was prevailed on by his late wife’s relatives to leave his child temporarily in their care on the plea that it would be to her best interest to remain in Clinton to complete her school term. But, actually, these relatives had no intention of ever returning the child, the circumstantial proof establishing that they had deliberately planned to keep her permanently, deceiving relator as to her whereabouts to the extent that he filed a habeas corpus proceeding against Monroe Hatcher, only to learn that she was in the household of another brother, Embry Hatcher. Their conduct does not commend itself to judicial reward and, in my opinion, the child’s interest is not well served by leaving her in defendant’s care even temporarily.
But, say the majority, there is some evidence that relator’s sister, “Aunt Ollie”, who has lived in his household for many years, has a mental affliction. Of course, this claim, like the other contentions of defendant, has not been established, the evidence consisting of speculative hints and opinions given by unqualified witnesses. Still, the majority seize upon these unproved charges to form the predicate for a remand of the case, unwittingly concluding that, although defendant has failed to carry the burden of proving that relator is unfit to have the custody of his child, relator should produce more testimony “as to his plans for taking care of his daughter” and the judge should “hear the testimony of Miss Ollie Brode as to her actions towards Emmie Sue in the past and what her actions will be toward her in the future”. In other *661 words, the burden which rested on defendant is now shifted to- relator and, apparently, he and Aunt Ollie must now satisfy the district judge that it will be safe to restore the child to his custody.
It is well settled that the judiciary is not authorized to interfere with a parent’s authority over his child unless the evidence is such as to convince the court that he or she will neglect the child or expose it to improper influences. Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley, 172 La. 266, 134 So. 87 and State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729. And, while it appears that this Court has on two occasions remanded custody cases for additional evidence, its action has been limited to matters wherein the record as presented on appeal left grave doubt as to the father’s financial ability or moral fitness to care for his child. See State v. Robin, 193 La. 789, 192 So. 349, and State v. Taylor, 210 La. 1004, 29 So.2d 43.
It would seem that the power to administer social justice in derogation of the law (Articles 216 and 250 of the Civil Code), which the Court has assumed, should, like all unbridled power, be sparingly employed and confined to those cases in which there is a clear and foreseeable danger to the child in returning it to its parental home. This, in my opinion, is not such a case.