AYRES, Judge.
This is a habeas corpus proceeding in which plaintiffs, husband and wife, seek the restoration of their three minor children from the defendants who, it was alleged, were holding and detaining them *406 without any right or authority. In an answer filed by these defendants, wherein they were joined by Mr. and Mrs. W, L. Marney, to whom custody of the children had been given by the defendants, plaintiffs are asserted to be unfit to have the custody of the children and incapable of providing for them. It was accordingly prayed that Mr. and Mrs. Marney be awarded their custody or, in the alternative, that the children be placed with the Department of Public Welfare.
The court concluded, after trial, the evidence was insufficient to warrant removing the children from the care and custody of their parents. There was judgment accordingly in favor of plaintiffs as prayed for awarding the care, control, and custody of the minor children to their parents. From that judgment, defendant J. D. Finch prosecutes a devolutive appeal.
Plaintiffs were married December 20, 1969. However, for some years preceding their marriage, they had lived together as man and wife, and, of their union, two children were born — William Richard Lindsay, Jr., and Deborah Geraldine Lindsay, aged 3 and 2, respectively. Of Mrs. Lindsay’s prior marriage to Bernis Garza there was one child, Reba Lucille Garza, aged 5 years. These are the children whose custody is the object of this proceeding.
Insofar as material wealth was concerned, this was a poverty-stricken family. Employment of the character of which plaintiffs were capable was hard to find. A great portion of the time both were unemployed; sometimes one and then the other was successful, for brief periods, in finding employment. Mrs. Lindsay found employment in Bossier City. She employed Mrs. Robert O. Mayo to look after her children, furnish them a place to stay, and provide their meals. Mrs. Lindsay had them on weekends. Because of illness, she terminated her employment. Plaintiffs sought employment elsewhere, as far away as Houston. They left the children with Mrs. Mayo, who would not give them up without first having been paid for her services. Plaintiffs paid Mrs. Mayo generally in small amounts which they were able to accumulate from their meager earnings or from that which they were able to borrow. In the meantime, it appears that Mrs. Mayo was reimbursed a balance due for the children’s care by defendant J. D. Finch, to whom, and his wife, Mrs. Mayo delivered custody of the children. Mr. and Mrs. Finch then placed the children with their daughter, Mrs. Ella Mae Morning, who, together with her husband, entered upon and pursued a course of action which would lead to the adoption of these children. There is no relationship by blood or marriage between the Finches and the Lindsays.
Of paramount consideration is the interest and welfare of the children. In resolving this question, it is not sufficient to deprive the children of parental care and love because the parents are not in position financially or otherwise to provide for them materially as well as others who are in a better financial way could provide. History is replete with examples of great men and women of humble beginnings who were reared in poverty-stricken homes. It has been truly said: “Be it ever so humble, there is no place like home.” There is no substitute for the love and care given by a mother and father.
It is manifest not only from their testimony but from the facts established in this record that the mother and father do love and care for their children. While their actions in living together out of wedlock cannot be commended, as such is not consonant with the customs and conventions of the time, nevertheless, their belated act of marriage, obtaining a place to live, and the husband’s employment evidence their intentions, motivated only through love and a desire to rear these children in a family unit where mutual love, care, and respect may be observed and extended by each to the others. If these be their genuine intentions, only time can tell. Then, if they do not succeed and their affairs do not work out *407 in the best interests of the minors, this decision and the arrangement provided for the children are not beyond rectification in a subsequent and appropriate proceeding.
Natural parents have superior rights to the custody of their children, whether legitimate or illegitimate, unless there is some sound and compelling reason for denying such rights. State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759 (1964); State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950).
In the latter case, it was very appropriately stated:
“In such cases the sole question for the court’s consideration is whether the parent by his or her conduct has forfeited his or her parental right to- the child, for it is the well settled jurisprudence of this state that the courts are not authorized to interfere with a parent’s authority over his or her children, except if the court is satisfied that he, or she, will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them, Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin et al. v. Talbot et ux., 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley et ux., 172 La. 266, 134 So. 87, and the burden is on those resisting the parent’s right to show his or her disqualification or unfitness to have the custody of the child. State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729; Heitkamp v. Ragan, 142 La. 81, 76 So. 247.” (Emphasis supplied.)
In the case of Heitkamp v. Ragan, supra, the Supreme Court quoted with approval the holding in Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839, as follows:
“ * * * And while we are bound also to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided until it is made plainly to appear that the father [or mother] is no longer worthy of the trust. The breaking of the ties which bind the father [or mother] and the child can never be justified without the most solid and substantial reasons. (Brackets ours.)” 142 La. at page 84, 76 So. at page 248. (Emphasis supplied.)
We have carefully studied the evidence in this case. We deem it unnecessary to review it in detail. It appears sufficient to say that the respondents have failed to carry the burden that was theirs to prove that the father and mother, by their conduct, have forfeited their rights to their children or that they are otherwise disqualified to have their custody. Under the facts and circumstances of this case, the parents’ manifestations of their love and care for these children, we conclude, as did the trial court, that the parents should have the opportunity to establish by their actions that it is in the best interests and for the welfare of the minors that they remain under their parents’ care, control, and custody, for, as heretofore stated in the quote, the breaking of the ties which bind parents and their children can never be justified except for the most solid and substantial reasons.
The judgment appealed is therefore affirmed at the cost of defendants-appellants.
Affirmed.