ROGERS, Justice
 

 The relator, Charles N. Harris, a resident of Mobile, Ala., sued out a writ of habeas corpus in the Twenty-Fourth judicial district court for the parish of Jefferson to obtain possession of his alleged minor daughter. The respondents •are Mr. and Mrs. S. J. McCall, of Iiarahan, La. After hearing the parties, the judge of the district court made the writ of habeas corpus peremptory and ordered that the child in dispute be delivered to relator. Respondents have appealed from the judgment.
 

 The record discloses that in the year 1929 the relator met Alice Melancon, divorced wife of William A. Foret, in the city of New Orleans. The parties entered into an illicit relationship and shortly thereafter removed to Boston, Mass., where they lived together as husband and wife. On June 10, 1930, as the result of their illicit union, a female child was born to the parties. This child was given the name of Ann Marie and baptized in St. Andrew’s Catholic Church, in Boston, as the daughter of Mrs. Alice Harris, mother, and Charles N. Harris, father. The parties lived in Boston for about a year and a half, when they returned to New Orleans. They remained in New Orleans for about three’ weeks, when they removed to Mobile. While the parties lived together in Mobile, another daughter was born as the result of their relationship. In October, 1932, Mrs. Foret left Mobile for New Orleans, taking her two children with her. This was shortly before relator had married his present wife, a divorced woman with one child, a boy about the same age as Ann Marie, the child in dispute.
 

 Finding that she was unable to adequately provide for her children, Mrs. Foret placed Ann Marie in the keeping of the respondents and her other daughter under the care of a respectable married couple residing in New Orleans. This was in the month of January, 1933. Shortly thereafter Mrs. Foret left New Orleans, and her present whereabouts is unknown.
 

 In the latter part of the year, 1932, relator was charged before the United States District Court at Mobile with a violation
 
 *1039
 
 of the. White Slave Traffic Act (18 U.S. C.A. §§ 397-404). On February 8, 1933, under his plea of nolo contendere, he was adjudged guilty of the charge and given a jail sentence of five years. The sentence, however, was suspended by the trial judge, and relator placed on probation, on condition that he should reasonably provide for the support of his two children and that he should report to the probation officer once every thirty days as to his occupation, behavior, and address for a period of five years.
 

 The present proceeding was instituted on January 10, 1936. Prior thereto, namely, on December 18, 1935, relator appeared before a notary public, in the city of New Orleans, and by authentic act formally acknowledged and legitimated his daughter Ann Marie.
 

 Although parents have a natural right to the custody of their children, nevertheless the state has an interest in children which goes beyond the mere parental" right. In all cases involving their custody, the welfare of the children must be considered, and should prevail over the mere parental right to their possession. State v. Dartez, 154 La. 722, 98 So. 164; State v. Stanga, 161 La. 978, 109 So. 783; Davis v. Willis, 169 La. 13, 124 So. 129; State v. Spiers, 170 La. 454, 128 So. 275.
 

 It is shown by the record that the relator holds a responsible position in Mobile. He lives with his wife, stepson, and mother-in-law in a good section of the city. On the other hand, it is shown by the record that respondents are substantial citizens, of this state, enjoying an excellent reputation among their friends and neighbors. They own and occupy their own home. Ann Marie was only two years old when she was intrusted to their keeping by her mother. For three years respondents have loved and cared for the little girl as if she were in fact their own child. They are not only willing, but anxious, to continue to do so.
 

 With these facts before us, we should hesitate even in an ordinary case to sanction any change in the. possession of a child. We know from the record that Ann Marie is now in good hands and that her moral, mental, and physical needs are now and will continue to be tenderly and carefully attended to. We are not certain that such would be the case if she were placed in charge of the relator. In the very nature of things, Ann Marie could not receive the same care in relator’s home that she receives, and will continue to receive, in the home of the respondents. As relator must necessarily give much of his time and attention to his business affairs, the care of his child would devolve largely on his wife, who. we gather from the record, is not in good health. Besides, she would be occupied in caring for her own small child, and possibly for her mother, with whom she and relator live.
 

 But whatever uncertainty we might feel in the matter must cease when we contemplate relator’s conduct towards his child, which does not commend itself to our favorable consideration. Relator transported Mrs. Foret, the child’s mother, from New Orleans to Boston; from- Boston back
 
 *1041
 
 to New Orleans; and then to Mobile. He lived with the woman for four years, during which period Ann Marie and her sister were born. Although both parties were free to marry during the four years they lived together, apparently no such thought ever entered the mind of relator. It was within relator’s power to marry the mother of his children, thereby remedying his mistake and protecting his two innocent children as far as it was possible to do so. But relator did nothing of the kind. On the contrary, after living with Mrs. Foret for four years and having two children by her, he married another woman. He admitted as a witness in this case that the reason Mrs. Foret gave up her home and left him was because' he was keeping company with the woman to whom he is presently married. His conduct in that respect does.not exhibit any great regard for the welfare of his children.
 

 It is strongly suggestive that relator’s solicitude for the welfare of his children did not manifest itself until after the United States District Court at Mobile had adjudged him guilty of violating the White Slave Law and under a suspension of the sentence had placed him under probation for five years on condition that he should reasonably provide for the support of his two children. But, be that as it may, relator is still under the ban of his conviction and sentence, and must account to the probation officer once every thirty days as to his occupation, behavior, and address.
 

 We regret that we are unable to agree with the conclusion reached by the trial judge for whose ability and judgment we have the highest respect, but our appreciation of the evidence in the record has forced us to the conclusion that the welfare of the child in dispute, which is the paramount issue in the case, will be best promoted if she remains under the care of respondents, with whom she was placed by her mother, who because of relator’s conduct was compelled to leave him, taking her children with her.
 

 For the reasons assigned, the judgment herein appealed from is annulled, and it is now ordered that there be judgment in favor of the respondents, Mr. and Mrs. S. J. McCall, and against the relator, Charles N. Harris, rejecting relator’s demand with costs.
 

 HIGGINS, J., dissents and hands down reasons.
 

 O’NIELL, C. J., absent.