FRENCH, APPELLANT, *v.* CATHOLIC COMMUNITY
LEAGUE ET AL., APPELLEES.

(No. 2034—Decided June 11, 1942.)

*Mr. Carl W. Dorn,* for appellant.
*Mr. Paul J. Gnau,* for appellees.

SHERICK, J. This appeal results from the trial court's action in sustaining defendant's motion for a dismissal of plaintiff's petition at the conclusion of plaintiff's opening statement. The action seeks the issuance of a writ of *habeas corpus.* The petition, and plaintiff's opening statement, disclose the following facts.

Plaintiff, appellant herein, is the father of the illegitimate child, Raymond Thomas Tritch, whose custody is sought to be obtained. When the child was eighteen days old, its mother placed it in the care and

control of one Mrs. McGratton. This child is now of the age of three years and nine months, and during all of its life, plaintiff has contributed the sum of $10 per month towards its support and maintenance. It is further stated that since conception and birth, the mother and father have married other parties, and the mother is now unable to care for and support the child.

The opening statement further discloses that the mother, in accordance with Section 1352-12, General Code, sometime during the child's life, surrendered it into the permanent custody of the appellee league; that she thereafter learned the appellee proposed to permit the child's adoption by one other than Mrs. McGratton, whereupon the mother, in writing, withdrew her consent of surrender of custody previously given to the league; and that the league's agent thereupon seized the child from the custody of Mrs. McGratton.

It was further stated that an adoption proceedings is now pending in the Probate Court of this county, wherein Mrs. McGratton and her husband seek the child's adoption, and that its mother and father have both filed therein their written consent thereto.

Upon this state of expected proof, the trial court held that the reputed father had no capacity to maintain this action, and by reason of which the trial court had no jurisdiction in the matter, and the petition's dismissal followed. The appellant maintains that the trial court erred, as a matter of law, in its order made. The appellee asserts the contrary, and maintains that if the trial court did err in the reason assigned for its action, it was right in its conclusion for other reasons. It is, therefore, argued that the matter in issue is now dependent upon three propositions, which this court must solve:

First. Is the claimed father of an illegitimate child, when its mother has abandoned and surrendered its

control, entitled to its custody without first having been adjudged the reputed father of the child?

Second. May the mother, after once having surrendered the child into the permanent custody of another, enabled by statute to provide for the child's future welfare and adoption, withdraw that consent before that other has moved to place its care and custody in the hands of another by adoption?

Third. Does the fact that the child's parents have consented to its adoption in the pending adoption proeedings in the Probate Court, bar the plaintiff father from prosecuting this action for its custody against the defendant?

In answering the first query, we perceive little profit to be gained in a dissertation upon what would have been the rights of the parties under the common law. We choose to solve the problem upon the modern and more humanitarian view that these little unfortunates, who play no part in their conception, are entitled to the law's utmost favor. When the father of such a child publicly acknowledges its paternity, and continuously contributes to its support and welfare, and is a proper person, he is next in law entitled to its custody, when the mother relinquishes or abandons its control. To say that such a father must first, by a public spectacle in a bastardy proceeding, acknowledge paternity or be adjudged the reputed father of the illegitimate child, before he can be considered the child's father and in his order entitled to the child's custody, is to require the doing of a useless and rather despicable thing. The public parading of the sexual misstep is not conducive of the infant's welfare or its peace of mind after it passes adolescence. It cannot enlarge the father's sense of responsibility. It might deter him from performance of his moral and legal duty. The question comes: Why require one to prove that which he freely admits? Such a course is far from the rule of modern practice.

Under our conception of the law the liability of a father for the support of his illegitimate child is based upon his responsibility for the consequence of his act, and not upon the fact of his admission or conviction of the child's paternity in a bastardy action; for one may be acquitted of a bastardy charge, and still be liable for the support of his illegitimate child, as was held in *State* v. *Schwartz,* 137 Ohio St., 371, 30 N. E. (2d), 551.

We, therefore, hold that the appellant has capacity to maintain this, an action in *habeas corpus,* and that the trial court did have jurisdiction thereof.

We approach the second question with the same views hereinbefore expressed. And, keeping in mind the paramount thought for the child's welfare, together with consideration for maternal concern, we ask ourselves: Why should such an unfortunate mother not be permitted to revoke her prior consent for relinquishment when she has not been advised of its acceptance, and it has as yet not been acted upon? She might have given it in contemplation of death, and thereafter made recovery. She might have been destitute and shortly thereafter acquired an inheritance and an ability to care for her offspring. Must she adopt her own child? Surely, she being a suitable person, it would have been a cruel thing for a society devoted to the welfare of children, as is the appellee, to say you cannot reclaim your given word and have back your child. We are positive that, in such a case, the appellee would never make such a claim.

There are statutes which confer rights, and grant certain privileges, upon which individuals may act; and if such is done, public bodies may thereafter act in respect thereto. But, it is well recognized in some of such instances that have reached judicial attention, that the individual may withdraw his consent and approval at any time before the public body acts there-

on. An example thereof is frequently found in the withdrawal of the names of petitioners in the transfer of school territory. It is our judgment that Section 1352-12, General Code, is a statute with like attributes. A parent makes an offer in which he or she agrees to be bound. The *quasi*-public body makes no formal acceptance. In the present instance, the appellee did not disturb Mrs. McGratton in her custody of the child. Appellee did not act until the mother withdrew her consent. It chose to accept her offer after it had been withdrawn. It is not our understanding that contracts are made in this fashion. It is, therefore, our judgment that the mother had a right to withdraw her relinquishment. It is just upon any theory of child welfare. It is in accordance with recognized statutory construction. It was proper upon the theory of contractual offer and acceptance.

Our answer to the third inquiry must be in the negative. In the first place, it must be understood that Mrs. McGratton is not a party to this action. We are, therefore, not determining any rights that may now, or hereafter, exist between Mrs. McGratton and the appellant father. That is a matter for the Probate Court to determine in the pending action before it. But we can, and do, determine the right of the plaintiff to maintain this action as is evidenced by the reasons assigned in our answers to inquiries one and two.

The issue in this action is one of present right to the child's custody as between the father and the appellee league. The adoption proceeding may not concern the appellee, if the appellant prevails in his quest.

It follows that the judgment of dismissal is reversed, and the cause remanded for further proceedings.

*Judgment reversed.*

LEMERT, P. J., and MONTGOMERY, J., concur.