**96 So.2d 20**

**In re Bernice Josephine Moss HARVILLE
and Oscar Eugene Harville Applying
for Adoption.**

No. 43142.

May 6, 1957.

Rehearing Denied June 10, 1957.

Love & Rigby, Shreveport, for appellants.

Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for appellee.

HAWTHORNE, Justice.

This case, which is a proceeding for the adoption of the two-year-old Oscar Eugene Ingram, has been consolidated in this court for the purpose of argument with two other cases—No. 43,237, State ex rel. Newton v. Harville, 233 La. 15, 96 So.2d 25, a habeas corpus proceeding for the custody of the Ingram child, and No. 43,260, State of Louisiana in the Interest of the Minor Oscar Eugene Ingram, 233 La. 15, 96 So.2d 25, juvenile court proceedings involving the alleged neglect and abandonment of the same child. Because of the close interrelation of these three cases, we have decided to write the opinion in the adoption proceeding setting forth the facts relevant to all three cases and resolving here the issues of law raised in each, and to render separate decrees in the other two appeals.

The pertinent facts are these:

On April 8, 1955, Mrs. Joan Newton Ingram, a resident of Arkansas, gave birth to the child here involved at the Highland Hospital in Shreveport, Louisiana. On the day this child was born, the mother executed a notarial surrender and consent for the adoption of the boy by Mr. and Mrs. Oscar Eugene Harville, and on the next day William Ingram, the father, executed a like consent and surrender. A few days later Ingram obtained a divorce from the child's mother in Arkansas.

In due course Mr. and Mrs. Harville applied to the Juvenile Court for Caddo Parish for the adoption of the infant, and on May 31, 1955, an interlocutory decree granting the custody of the child to the Harvilles was rendered by that court. The infant has remained continually in the Harvilles' home since he was a few days old, and is presently there.

On February 27, 1956, the mother of the child filed in the adoption proceeding then pending in the juvenile court a petition of opposition and withdrawal of her consent to the adoption. On July 6, 1956, after a hearing on this opposition the juvenile judge vacated and recalled his previous interlocutory decree of adoption and dismissed the adoption proceeding. From this judgment Mr. and Mrs. Harville appealed to this court. (This appeal is No. 43,142 on our docket.)

After the judgment had been rendered in the adoption proceeding, Joan Newton, the mother of the child, filed in the First Judicial District Court for the Parish of Caddo on July 10, 1956, a petition for a writ of habeas corpus seeking the care, custody, and control of the child. In this proceeding Mr. and Mrs. Harville were made respondents. On September 20, 1956, after a hearing in the habeas corpus proceeding the district judge ordered Mr. and Mrs. Harville to deliver the child to the relatrix within 24 hours. The Harvilles appealed from that judgment. (This appeal is No. 43,237 on our docket.)

On September 20, 1956, the same day judgment was rendered in the habeas corpus proceeding, the probation officer of the Caddo Parish juvenile court filed in the juvenile court an affidavit pursuant to R.S. 13:1570(A) (1), alleging that the minor child here involved was a neglected child in that his mother, Joan Newton, had neglected and refused to provide proper and necessary support and medical and other care for his wellbeing and had abandoned him. That proceeding is No. 13422–A on the docket of the juvenile court. On October 8, 1956, the date fixed for a hearing under the affidavit charging that the child was neglected, a representative of the Louisiana Department of Public Welfare filed in the Caddo Parish juvenile court an affidavit under R.S. 9:403(B), alleging that the child had been abandoned by his parents and requesting a hearing on this affidavit pursuant to the act. This proceeding is No. 13422–B on the docket of the juvenile court. The two proceedings were consolidated in that court. After a hearing the judge concluded that the child was not a neglected child and dismissed that proceeding. From this judgment an appeal was taken to this court. In the abandonment proceeding the trial judge refused to sign an order fixing a time and place for a hearing of the matter, and the Louisiana Department of Public Welfare applied to

this court for a writ of mandamus ordering the judge of the juvenile court to fix a time and place for a hearing under the abandonment affidavit. This court refused to grant the writ (our docket No. 43,248) because no showing had been made sufficient to justify the exercise of our supervisory jurisdiction. The juvenile court then granted the Department of Public Welfare an appeal. (These two appeals are docketed in our court as No. 43,260.)

■■■■ The juvenile court's reasons for judgment indicate to us that the judge believed it was to the best interest of the child that he be adopted by the Harvilles. The judge stated, however, that he was bound by the decisions of this court in Green v. Paul, 212 La. 337, 31 So.2d 819, and In re Byrd, 226 La. 194, 75 So.2d 331, and dismissed the adoption proceeding. Those two cases are full authority for the judgment of the juvenile court in the adoption proceeding. It was held by this court in both cases that the consent of the parent or parents must be of a continuing nature, and that withdrawal of consent before rendition of the final decree is a bar to the adoption just as if consent had never been given. In Green v. Paul it was stated that the withdrawal of consent was effective even though it were founded on whim or caprice.

The Harvilles, appellants in the adoption proceeding, urge this court to reconsider and overrule its holding in the Green and Byrd cases, pointing out that Act 228 of 1948, R.S. 9:421–441, the basic law of adoption, provides: "The basic consideration for this decree [of adoption] and all others shall be the best interest of the child." R.S. 9:432. They also rely upon the reasoning in the dissenting opinions written in the two cases.

The majority of this court is of the view that the two cases cited were correctly decided and are controlling, and that the judgment of the juvenile judge in the instant case was correct.

I myself am not in accord with this view, as shown by my dissent in the Byrd case. I recognize, however, that the ruling in those cases is the established law of this state, although it is contrary to the law of many other states. See 22 Tulane L.Rev. 513 et seq. (1948); Annotation, 156 A.L.R. 1011 (1945).[1] It is my opinion that the law should be as stated in the A.L.R. annotation cited, thus: "* * * the trend of the more recent authority is toward the position that where a natural parent has freely and knowingly given the requisite consent to the adoption of his or her child, and the proposed adoptive parents have acted upon such consent by bringing adoption proceedings, the consent is ordinarily binding upon the natural parent and cannot be arbitrarily

---

1. See also Pugh, Robert G., Juvenile Laws of Louisiana, Their History and Development, Consent to the Adoption, to be published in 1957 by Thomas J. Moran's Sons, Inc., Baton Rouge, Louisiana (quoted in appellants' brief).

withdrawn so as to bar the court from decreeing the adoption, particularly where, in reliance upon such consent, the proposed adoptive parents have taken the child into their custody and care for a substantial period of time, and bonds of affection, in the nature of a 'vested right,' have been forged between them and the child."

■ Under the rule of law now existing in this state, persons are denied the right to adopt children because of the withdrawal of parental consent. Yet at times parents are denied custody of their own children because of moral unfitness or some other reason. See State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8. It is surely most undesirable to leave a child, whose welfare is our primary concern, in such an insecure position, with the persons having custody unable to adopt him and his parents denied his custody. Nevertheless, this is a matter that addresses itself to the Legislature.

Accordingly the judgment of the juvenile court in the adoption proceeding will be affirmed.

■ On the trial of the habeas corpus proceeding in the district court the trial judge refused to allow respondents to introduce any evidence to prove their allegations that the mother was not a fit and proper person to have the custody of the child, that she did not love the child, and that she was morally unfit and unworthy and had a bad reputation. The trial judge was of the opinion that, since the repeal of Act 79 of 1894, R.S. 9:551, 552, and 553, by Act 111 of 1956, the proper forum to hear such evidence is the juvenile court. The effect of such a ruling is that, as between the mother of a child and third parties having custody, the mother has an absolute right to the child, and that such third parties cannot show that she is morally unfit to have the child; and she would be entitled to custody regardless of the child's best interest.

Act 79 of 1894, R.S. 9:551, 552, and 553, repealed by Act 111 of 1956, vested jurisdiction in the district courts to determine whether the physical and moral welfare of any child was endangered by the neglect or abuse of any parent or parents or by their inability, refusal, or neglect to care properly for the child, and if the proof was sufficient, to remove the child from the custody of his parents; to punish by fine or imprisonment any parent who interfered with the child or removed the child from any place provided by the court, and, further, upon a proper showing at any time thereafter to restore the child to his parents. The jurisdiction in such cases is now vested in the juvenile courts. See R.S. 13:1570. However, just because the district courts have lost original jurisdiction to hold hearings on the issue of whether a child is neglected or abused or improperly cared for by his parents and to remove him

from their custody, it does not follow that these courts cannot in a habeas corpus proceeding admit evidence of the moral fitness of the parties who are opposing each other to obtain custody of the child. In the one instance it is a matter of jurisdiction; in the other, of the admissibility of evidence. Certainly the repeal of the 1894 act could not deprive the district courts of the right to hear such evidence.

In the recent case of State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8, 9, a habeas corpus proceeding in which parents were seeking the custody of their minor child, the custody of the child was the sole issue. We said there:

"* * * We have consistently held that, although parents have a paramount right to the custody of their minor child, this right is not an absolute one and must yield to the superior right of the State to deprive a parent of the custody of his child if the best interest and welfare of the child require it. * * * In State ex rel. Harris v. McCall, 184 La. 1036, 168 So. 291, 292, this court said:

" 'Although parents have a natural right to the custody of their children, nevertheless the state has an interest in children which goes beyond the mere parental right. In all cases involving their custody, the welfare of the children must be considered, and should prevail over the mere parental right to their possession. * * *' "

Under this principle of law evidence of the fitness of the mother to have custody of her child in the instant case was not only admissible but necessary, and the trial judge erred in excluding this evidence. The judgment in the habeas corpus proceeding will therefore be reversed, and the case remanded.

■ We are of the view that the judgment of the juvenile court holding that the child was not a neglected child under R.S. 13:1570(A)(1) is correct. The affidavit filed in this proceeding under that statute avers that the child is neglected in that his mother has neglected and refused to provide proper and necessary support for him. Under this statute it is the person who is legally responsible for the child who must neglect him for the statute to apply. In the instant case the Harvilles have had the legal custody of the infant during practically his entire life, having obtained an interlocutory decree granting to them his care and custody in the adoption proceeding. Under the facts and circumstances of this case the statute has no application, as it is fully established that the Harvilles not only love the child but have provided him with all things necessary for his care and maintenance.

■ As to the proceeding under the abandonment affidavit filed by a representative of the Louisiana Department of Public Welfare under R.S. 9:403(B), the statute

provides that when such an affidavit is filed, "The judge shall then by order fix a time and place for the hearing of this matter not less than sixty days after the date of the order". As we have pointed out, the hearing on this affidavit was consolidated with the hearing on the neglect affidavit. The trial judge refused to sign the order, stating that the affidavit did not present any new issues, that an inquiry into the matter could serve no purpose except delay, and that delay was not to the best interest of the child. We seriously doubt whether the refusal of the trial judge to sign the order is a final judgment from which an appeal lies to this court under the provisions of Article 7, Section 52, of the Louisiana Constitution. However, since application was made to this court for a writ of mandamus and the writ was denied for the reasons given, this ended the matter.

The judgment dismissing the adoption proceeding is affirmed.

PONDER, J., concurs.

McCALEB, J., concurs with written reasons.

HAMITER, J., concurs in part and dissents in part assigning written reasons.

McCALEB, Justice (concurring).

While I am in accord with the rulings in this case, I do not subscribe to the personal observations and criticisms of the author of the main opinion respecting the jurisprudence of this State established in Green v. Paul, 212 La. 337, 31 So.2d 819 and In re Byrd, 226 La. 194, 75 So.2d 331. These decisions are founded on our interpretation and analysis of our own laws, of which adoption is a creature. See Owles v. Jackson, 199 La. 940, 7 So.2d 192, 194. In the first case (Green v. Paul), we gave full consideration to the jurisprudence of other states and found that our views were supported by cases from Missouri, California, Minnesota, Washington, Michigan and Mississippi, to which may be added the states of Ohio and New York.[1] Indeed, the statement made on page 4 of the main opinion in this case, 233 La. 8, 96 So. 2d 22, that our jurisprudence is "contrary to the law of many other states", is not accurate in my view, unless the holdings in four states (Massachusetts, Kentucky, Ore-

1. See State ex rel. Scholder v. Scholder, 22 Ohio Law R. 608, 2 O.L.A. 471; In re Rubin's Adoption, Ohio Prob.Ct., 6 Ohio Supp. 26; French v. Catholic Community League, 69 Ohio App. 442, 44 N.E.2d 113 and In re Anonymous, 178 Misc. 142, 33 N.Y.S.2d 793, 798, where the New York court cogently remarked:
"adoption being a creature of the statute and dependent for its consummation upon approval of the court, any agreement of the parties or any one of them is necessarily conditional; the parties thereto are powerless to confer upon each other any absolute rights pertaining to the parenthood of a child without complying with the pertinent statutory requirements and securing the approval of the court."

gon and Texas) are considered to be "many".

I concur in the decree.

HAMITER, Justice (concurring in part and dissenting in part).

I agree with the conclusions expressed in the majority opinion with respect to the habeas corpus, neglect and abandonment proceedings. However, for the reasons which I assigned in Green v. Paul, 212 La. 337, 31 So.2d 819, I must respectfully dissent from the affirmance of the judgment dismissing the adoption proceeding.