SAMUEL, Judge.
For three years prior to her marriage to the child’s father its mother, Helen Gilbert Gordon, had been living in New Orleans with appellees, Mr. and Mrs. Frank Issam Wilson. Immediately following her marriage Helen. Gordon returned with her husband to reside with the appellees. She and her husband remained together only six weeks after which time he left her and moved to the home of his mother.
Helen Gordon continued to live with the appellees and, several months after the separation from her husband, charged him in the Juvenile Court with “unlawfully failing to provide for the support of his pregnant wife”, she then being pregnant with the child now the subject of this adoption proceeding. The husband entered a plea of not guilty to the charge of non-support but never appeared for trial despite the fact that a capias, never executed, was subsequently issued for his arrest.
The child was born at a local hospital on July 20, 1958 and when they left the hospital both he and the mother were taken into appellees’ home. The child has been supported and cared for by appellees only and its father has never contributed to that support or care.
On September 4, 1959, under R.S. 9:421 et seq., appellees filed a first petition in the Juvenile Court seeking an interlocutory decree awarding them the custody and, in due course, the adoption of the child. The father could not be located and, from all the information revealed by the record, he appears to have been out of the State of Louisiana. The court appointed an attorney at law as curator ad hoc to represent the father and the curator, after making unsuccessful attempts to contact the father, *674 filed an answer in the form of a general denial.
On October 29, 1959, after a hearing on the first petition, the court rendered an interlocutory decree granting the custody of the child to the appellees. During the course of the hearing the child’s mother unconditionally consented to the entry of the interlocutory decree.
Helen Gordon continued to live with ap-pellees until October 3, 1960, at which time she moved to the home of one of her relatives. The child remained, and still remains, with the appellees.
On January 10, 1961, appellees filed their second petition seeking the final decree of adoption and a hearing thereon was set for March 8, 1961. A copy of this second petition was served upon the Louisiana Department of Public Welfare and a notice of the hearing was sent to the Department, the attorneys for the petitioners (the present appellees) and the petitioners. Neither the petition nor any notice of the hearing was served upon or sent to the child’s mother. After the hearing, at which Helen Gordon did not appear, the court rendered a final decree of adoption in favor of appellees. The record reveals that the mother of the child objected to the adoption and desired the return of custody of the child to her, which obj ections, as far as is shown by the record, were made only to representatives of the Department of Public Welfare, and that these objections were made known to the court prior to the rendition of the final decree.
The mother and the father of the child have prosecuted this appeal from the final judgment of adoption. The Louisiana State Department of Public Welfare has filed a brief as amicus curiae supporting the position of appellees.
When the petition for an interlocutory decree was filed on September 4, 1959, and when the hearing on that petition was held on October 28, 1959, R.S. 9:432 (3 LSA-R.S. 9:432) controlled the granting of final decrees of adoption. This law was amended and re-enacted by Acts 250 and 268 of 1960 (3 LSA-R.S. 9:432 — pocket part), which legislative acts became effective on July 27, 1960, and R.S. 9:432 now reads as follows (the italicized portions represent the changes effected by the amendments, which changes were simply added to the statute as it read prior to the amendments) :
“A. The child shall have lived with the petitioner for at least one year and at least six months shall have elapsed after the granting of an interlocutory decree before the petitioner may apply for a final decree of adoption. The same procedures as are prescribed in R.S. 9:428 and 9 :429 for the interlocutory decree are followed, except that the petition for a decree of final adoption need not be served %ipon anyone except the department of public welfare. A second confidential report must be presented the judge preceding the hearing on the final decree of adoption. The findings of this report shall be based upon the same consideration as prescribed in R.S. 9:427 for the report which precedes the interlocutory decree and shall disclose any changed conditions and all new pertinent information.
“B. The court, after hearing and after taking into consideration information from all sources concerning the adoption, may enter a final decree of adoption; or it may deny the adoption. The basic consideration for this decree and all others shall be the best interest of the child. The clerk of court shall forward a certified copy of this decree to the department. The withdrawal of consent by the legitimate parent or parents, by the mother or by the father who has acknowledged by notarial act as provided by Article 203 of the Civil Code, shall not bar a final decree of adoption."
Prior to the 1960 amendments the second sentence of the above quoted paragraph (A) of R.S. 9:432 ended with the word “follow *675 ed” so that the law required that upon the application for a final decree the same procedures as prescribed in R.S. 9:428 and 9:429 were to be followed. R.S. 9:428 required the court to “set a time and place for the hearing of the petition not less than thirty nor more than sixty days after completion of the service of process”. The service of process referred to is set out in R.S. 9:425 which provides that a copy of the petition shall be served on each living parent of the child in the absence of a legal surrender or court declaration of abandonment.
In addition, prior to the amendments and at the time of the giving of consent by the mother in the instant case, the legitimate parent could have changed his or her mind, withdrawn the previously given consent and prevented the adoption at any time prior to the signing of the final decree of adoption. Under the jurisprudence the continuing consent of the natural parent was necessary until the rendition of the final decree. In re Harville, 233 La. 1, 96 So.2d 20; In re Byrd, 226 La. 194, 75 So.2d 331; Green v. Paul, 212 La. 337, 31 So.2d 819.
Thus, as it relates to the instant case, at the time of the hearing on, and the entry of, the interlocutory decree awarding custody, the law then in effect required that Helen Gordon, the legitimate mother of the child, be served with a copy of the second petition, i. e., the petition for a final adoption, and also required her continuing consent to the adoption until the rendition of the final decree. The 1960 amendments, which became effective nine months after the entry of the interlocutory decree awarding custody, eliminated the necessity of such service and prevented the withdrawal of any consent she may have given from barring a final decree of adoption.
The law remains unchanged regarding the necessity of a consent to the adoption by the natural parent. Such a consent was necessary at the time of the interlocutory decree and at the time of the final decree in the instant case. The question thus presented for our consideration, and here we are concerned only with the problem involving the natural mother, is whether or not the 1960 amendments converted her consent to the interlocutory decree into an irrevocable (insofar as withdrawal thereof would not bar the adoption) consent to the adoption. We are of the opinion that they did not.
Under our adoption statutes the interlocutory decree merely awards custody of the child to the adoptive parents for that period of time between the interlocutory and final decrees, a trial period as contemplated by the statutes. In the instant case the consent given by the natural mother to the entry of the interlocutory decree could not have been an irrevocable consent to the final adoption because, as previously pointed out, at the time that consent was given the law specifically reserved to her the right to bar the adoption by withdrawing such consent prior to the final decree. Under that law she could not have given irrevocable consent prior to the final decree and she would have been informed as to the date on which the court would consider that final decree. Here the retrospective application of the amendments would have the effect of depriving the mother of a substantive right she had to her child. The amendments, as applied, certainly are more than procedural or remedial.
We wish to make it clear that we do not hold invalid the 1960 amendments to R.S. 9:432 when these amendments are prospectively applied so that the natural parent knows that the consent he or she gives is a final consent to the final adoption itself.
We have been asked by counsel for appellants not only to reverse the judgment below but also to order that the custody of the child be given to his clients. We cannot grant the latter part of this request. Our dismissal of the adoption proceeding causes the interlocutory decree awarding custody, an incidental order, to fall, so that the parties are placed in the same position they would occupy if the adoption proceeding had never been filed. The record is clear that the mother voluntarily surrendered custody *676 of her child to the appellees and the question of regaining such custody cannot be decided in this proceeding. Green v. Paul, supra.
The judgment appealed from is reversed and it is ordered that the adoption proceeding be dismissed at the cost of the appellees.
Reversed.