FRUGÉ, Judge.
This is a habeas corpus proceeding instituted by Mr. and Mrs. Melvin Shilling, residents of Sherman, Texas, seeking custody of a minor daughter, Dawn Michelle, born to Mrs. Shilling while she was separated from her husband and residing in Oakdale, Allen Parish, Louisiana. Shortly after the birth of this child, physical custody of the child was surrendered by Mrs. Shilling to defendants Mr. and Mrs. Alec Doyle, residents of Rapides Parish, Louisiana. Following Mrs. Shilling’s return to Sherman, Texas, where she re-established her matrimonial domicile with her husband, the Shillings made an effort to regain custody of the child. Such efforts resulted in the instant habeas corpus proceeding.
After the trial on the merits, the lower court granted judgment maintaining the writ of habeas corpus and ordering defendants to return custody of Dawn Michelle to plaintiffs herein. We granted a Writ of Certiorari and a stay-order, directing to the lower court that it transmit to this court, the entire record of the proceedings, at the cost of the defendants.
Mrs. Shilling was taken from her father at the age of five and lived in various foster homes until she was committed to the Gainesville Industrial School for Girls. While in this school she was married, with authorization of a Judge, to Melvin Shilling. Shortly after her marriage, Mrs. Shilling was returned to the school for allegedly committing adultery with one of her husband’s mother’s friends. In the fall of 1966, she gave birth to a child, Thomas Leon. About a month and a half after giving birth to this child, she went to visit her father in Houston, Texas, for *74 Christmas. She and her husband lived in Sherman, Texas, at the time. Her father had little or nothing to do with her and after a day or two she left the child with a hardly known stepmother while she roamed about the City of Houston from Christmas Day until approximately one week later. She never checked on the welfare of the child or attempted to contact her husband. Finally, she allegedly hitch-hiked back to Sherman, Texas, and upon her arrival, found that the child, Thomas Leon, had been put in the care of Mr. Shilling’s sister and brother-in-law in Dallas, Texas. About the middle of January of 1967, Patsy Tucker Shilling left Sherman, and after hitchhiking for about two weeks, ended up in the City of Oakdale, Louisiana. Patsy Shilling took employment at various cafes and night spots, and while in Oakdale, she lived in open and notorious adultery with numerous men from in and about the parish. Mrs. Shilling, then being pregnant for the child in question, made no attempt to contact her husband, and likewise her husband made no attempt to locate her.
The child, Dawn Michelle, was born October 19, 1967, at Charity Hospital in Pine-ville, Louisiana. The plaintiff registered under the name of Mrs. Margie Doyle and gave false information so that the birth certificate of the child showed that the child was really born to Margie Doyle and Alec Doyle.
Following the birth of the child the Doyles gave Patsy Shilling $50.00 and she headed back to Sherman, Texas. She reestablished relations with her husband, who suspected that during the interim of her leaving and returning that she had given birth to a child. He questioned her about this and she admitted that she had given birth to a child and had given the child to the Doyles. He is also generally familiar with her conduct while in Oakdale, Louisiana.
After learning of this child Mr. Shilling wrote the Doyles and attempted to telephone them. He also testified that he contacted his attorney about the matter and that he got in touch with the Department of Welfare. In January of 1968 he went down to Oakdale and attempted to obtain custody of the child. He was put out of the Doyles’ home at the point of a gun. While parked across the street from the Doyles in his automobile he was told to leave the area by the police. Finally, on August 7, 1968, plaintiffs filed this suit asking that a writ of habeas corpus be issued, and after due proceedings, that custody of Dawn Michelle be awarded to them.
In their appeal, defendants allege error on the part of the lower court in not giving greater consideration to the physical, mental and moral well-being of the minor, Dawn Michelle. Second, by ordering the child to live with a mother who in the words of the Trial Judge, “lead the most licentious life believable, or actually unbelievable”. Third, in giving custody to Melvin Shilling, who plaintiffs allege, “Has exhibited a complete and total disregard for the values which are the guidelines of our society and has further ignored all further parental responsibility in regard to his first child for the past two years.”
In custody cases the primary considerations are twofold. The first is the paramount parental right to custody of a child, and the second is the interest in the welfare of the child.
The jurisprudence of this state is well settled that, particularly as to third parties, a mother and/or father have a paramount presumptive right to the custody of the child, and that only under unusual circumstances are the courts justified in depriving the parents of their right of custody. It is also the burden of the party seeking to deprive the parent of custody to prove that such unusual circumstances exist as would justify a court in depriving the parents of such custody.
As well, the jurisprudence has long been to the effect that a child may be removed from his natural parents and placed *75 with some third party in the event that the welfare of the child demands such a change. As was noted in the case of State ex rel. Deason v. McWilliams, 227 La. 957, 81 So. 2d 8 (1955), at page 9:
“As this is a habeas corpus proceeding, the custody of the child is the sole issue to be decided by this court. We have consistently held that, although parents have a paramount right to the custody of their minor child, this right is not an absolute one and must yield to the superior right of the State to deprive a parent of the custody of his child if the best interest and welfare of the child require it. * * * [Quoting from State ex rel. Harris v. McCall, 184 La. 1036, 168 So. 291 at 292] * * * ‘Although parents have a natural right to the custody of their children, nevertheless the state has an interest in children which goes beyond the mere parental right. In all cases involving their custody, the welfare of the children must be considered, and should prevail over the mere parental right to their possession. * * * ’
“As we pointed out in State ex rel. Guinn v. Watson, [210 La. 265, 26 So.2d 740], supra, the courts of this state have invariably followed the rule that the welfare of the child is of paramount importance in determining who is entitled to its custody in a case of this kind. * * * Moreover, it was recognized in State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, that by his conduct a parent can forfeit his parental right to the custody of his child.”
See State ex rel. Steve Paul et al. v. Peniston, 235 La. 579, 105 So.2d 228 (1958).
In the absence of unusual circumstances, the paramount right of the Shillings would demand' that we affirm the lower court in awarding custody to them. After a close study of the record, however, it is this court’s opinion that such unusual circumstances do exist so that we are justified in depriving at least temporarily, the Shillings of the custody of the child, Dawn Michelle.
We feel that the allegations of error by the defendants could be combined in an assertion that the lower court properly observed the facts, yet reached a wrong conclusion.
The lower court felt, as we do, that Patsy Tucker Shilling as of now, has not yet proven herself ready to be given custody of this child. Granted that she has shown a desire to reform, but how sincere she is in this reformation, only time will tell. Due to the importance of our decision it should not be based on a mere temporary showing of a new way of life. We note the pertinent parts of the trial court’s opinion, which reflects our feelings:
“Relators contend that Patsy Shilling, while guilty of immoral conduct, has nevertheless changed and at this time is morally fit to have custody of her child. Of this fact the court is not entirely convinced. There is indication that she has had a realization of how abominable her conduct was while in Oakdale and sincerely regrets it. How long this change will persist I do not know. If Patsy Shilling were the only relator in this case I would not at this time grant her relief.

“ * * * I full well realize that he [Melvin Shilling] is living in community with Patsy Shilling and that she will be in contact with the child and will care for the child. Her conduct for the past eleven months has been commendable and upright and the Court can only hope that it will continue to be so in the future.” (Emphasis ours.)
The testimony in the record as to the “activities” of Patsy Shilling was in great detail, and in the words of the lower court, “While in Oakdale she lead the most licentious life believable, or actually unbelievable.” We must admit, however, that past activities are by no means controlling as *76 to what kind of a mother Patsy Tucker Shilling has been since October 20, 1967, or will be in the future. But because of the recentness of such undesirable conduct, this court cannot bring itself to allow a period of a little over eleven months of “normal” conduct, to weigh equally so as to say that Patsy Tucker Shilling is at the moment prepared to be a good mother to Dawn Michelle.
The main reason that the lower court awarded custody to the Shillings was that the court believed that Melvin Shilling was willing and able to care for the child. In its written reasons for judgment, the court noted in this regard:
“ * * * There is no proof in the record whatever that Melvin Shilling is not competent to have his child. He states that he wants the child, that he wants to rear the child as his own, that he is married to the mother of the child and he thinks ■ that they should have the child to rear. It is true that he has a two-year-old child in the custody of his sister. This is not reason to deprive him of the custody of this child if he is legally entitled to it.”
In their brief the defendants allege that in view of Mr. Shilling’s relatively easy acceptance and condonation of his wife’s activities, he must be of “low moral fiber” and therefore, obviously incompetent to have the child. As to this contention, we do not consider ourselves fit to judge. Our decision as to the competency of Mr. Shilling must be based on the evidence and facts brought out by the record, and we cannot attempt to judge Mr. Shilling according to his marital-moral standards, or to apply to him the general mores of society, when we decide if he is competent as a father. After reviewing the record however, we do not share the opinion of the lower court that the record is bare of any evidence of unpreparedness on the part of Mr. Shilling to accept parenthood.
As was noted somewhat briefly in the discussion so far, the Shillings have an older child, a boy, Thomas Leon. Since his birth in 1966, Thomas has not been with the Shillings except for a period of approximately a month and one-half shortly after his birth. Mr. and Mrs. Shilling have made no attempt whatsoever to take care of this child. Mrs. Shilling abandoned this child in Houston, Texas, when he was only some six weeks old. Almost immediately thereafter, this child was placed by Mr. Shilling in the home of his sister in Dallas, Texas. Even though he is two years old at this time, he never lived with Mr. and Mrs. Shilling in their home and they have never raised him as their own child. In fact, it appears that neither Mr. nor Mrs. Shilling have any very definite idea as to when, if ever, they may take this child and raise it in their own home.
The Shillings have given various reasons as to why they do not have Thomas Leon with them. All of these reasons are technically of no importance as to the custody of Dawn Michelle, but nevertheless we feel must be considered in attempting to judge whether Melvin Shilling is competent and willing at this time to receive custody of Dawn Michelle.
The evidence as to the feelings of Mr. and Mrs. Shilling in regard to the presence of Thomas Leon in their home, is reflected by the following testimony extracted from the record:
“Q. Where is he?
“A. He’s staying with some kinfolks right now because we don’t have— we don’t have this other one and because we’re going to have this other one right now. I don’t want him to be brought up as an only child. * * *
‡ >i< 3{c ‡ ‡
“A. Yes, sir. We didn’t leave it with them. They’re taking care of it because we don’t have the elements, see, right now, and I don’t want him *77 being brought up being an only-child by himself. I wanted him to have some other kids to play with. They’re just taking care of him ■ mostly, just like a baby sitter, in other words. (Emphasis added.)
* * * * * *
“Q. Why haven’t you picked up your other child from your sister-in-law ?
“A. I don’t — I don’t — well, like I said, I don’t want him to be an only child.
* * * * * *
“Q. How often do you see him?
“A. Sometimes twice a month. Sometimes once a month. Something like that. Once in a while if we decide to go over that way, we go over there. They’re not trying to cut us off from him. They’re just like baby sitters or a- nursery, you might say, just keeping him, you know. It’s his sister, and she’s keeping him like a baby sitter. Like if I was working and he was working, she would be the baby sitter.
“Q. But there is no reason why you couldn’t keep your child on your own?
“A. Because we haven’t got Michelle.
“Q. That’s the reason why?
“A. They won’t give her back.
“Q. And that’s the only reason you don’t pick up the child in Dallas, Texas?
“A. Yes, because I’m hoping to have Michelle, get Michelle that way. When I have this one, we’ll have all three of them, see?”
Mr. Shilling:
“Q. Do they still have Thomas Leon?
“A. Yes. And he’s going to stay that way until I find out how this is going to come out. If I get Dawn Michelle back, I get him back, and if I don’t — well, he’s going to be where he’s at until things are changed. (Emphasis supplied.)

“Q. Suppose you’re not awarded the custody of Dawn Michelle, would you then pick up Thomas Leon?
“A. I’m planning on leaving him where he’s at.
“Q. If you don’t get the custody of Dawn Michelle?
“A. Yes, if I can’t have all three, there’s no use to leave one out.” (Emphasis supplied.)
As regards the Shillings’ future family plans, we note the following:
Mr. Shilling:
“Q. Well, isn’t your wife expecting a child now?
“A. As far as I know. I guess she is. I guess if I don’t get Dawn Michelle, the welfare is going to get that one. If I get Dawn Michelle, I’ve got other plans, (emphasis added)
“Q. What are your other plans?
“A. Working a little bit longer.
“Q. Huh?
“A. Working a little bit longer.
“Q. Working with what a little bit longer?
“A. To buy things for my kids and to get a divorce, (emphasis added)
“Q. Are you planning on getting a divorce ?
“A. If we don’t get our children back.
“Q. Let me understand this. Your wife is presently expecting another child. Is that correct ?
“A. Yeah.
*78 “Q. Now, if this child is born to your wife, would this be reason enough for bringing Thomas Leon back to live with you so he wouldn’t be an only child ?
“A. No, sir. Without all three of them, no. I’ve been through enough as it is (emphasis added).
“Q. And—
“A. Nobody is going to keep my child, if I can’t. (Emphasis supplied.)
“Q. In other words, you are intending to divorce your wife if you do not get Dawn Michelle back. Is that correct ?
“A. That’s right.
“Q. What are you going to do with the children ?
“A. I’m going to keep the first one I’ve got.
“Q. Yourself. Why wouldn’t you want to keep this second or this third one?
“A. If I can’t have the second one, why should I worry about the others. If you have three children and somebody took one, I don’t see why you would want the others without all of them. (Emphasis supplied.)
“Q. Is this your child she’s bearing at the present time ?
“A. I hope it is. I don’t guess she’s a whore.
“Q. But you don’t want it if you can’t get Dawn Michelle?
“A. Well, there wouldn’t be no sense in it, if I can’t have all three of them.
>}c j{: j(c * *
“Q. But you won’t raise this one and take it as your own if you don’t get Dawn Michelle back. Is that correct?
“A. Well, with a divorce I would probably let my wife keep it.
‡ i}c ‡ ‡ jfc *
“Q. If you can’t have all three, you’re just going to divorce your wife and leave Thomas Leon in Dallas. Is that correct?
“A. Probably.”
The above-quoted testimony shows that Mr. and Mrs. Shilling, at present, are not prepared to accept the responsibility of the custody of Thomas Leon, and therefore, we fail to see how the situation would differ in regards to Dawn Michelle.
The trial court found that Mrs. Shilling was not a proper person to be given custody of the child in question. However, in awarding custody of this child to Mr. Shilling, the court, in effect, has given custody of this child to Mrs. Shilling. Certainly, if Mrs. Shilling is not a proper person to be given custody of this child and if Mr. and Mrs. Shilling continue to live together as husband and wife, it cannot possibly be to the best interest and welfare of this child to place it in the home with Mrs. Shilling.
After a deep consideration of the issues and the possible consequences of our decision, it is our sincere opinion that in this case there are those “unusual circumstances” wherein we feel that at this time the best interest of the child would demand that she be left in the custody of Mr. and Mrs. Doyle.
Although the problem of continually changing environments for a young child is always of great concern to courts, in this case we feel that the possible detriment to the child of living with its parents if their life has not changed, far outweighs the possible disadvantages or detriment that would be occasioned by a change at some future time from the home of the Doyles.
Sometime in the future, when plaintiffs may offer additional and better proof of their willingness and ability to accept parenthood and of Mrs. Shilling’s complete abandonment of her previous wayward manner of living, a court may be ready to *79 again consider the possibility of these parents’ gaining custody of their child so that they may exercise the privilege and responsibility of raising her.
For the foregoing reasons, it is the ruling of this court that the judgment of the lower court upholding the writ of habeas corpus and of granting custody of the child, Dawn Michelle, to the plaintiffs, Mr. and Mrs. Shilling, is hereby reversed and the defendant-appellants, Mr. and Mrs. Alec Doyle, are hereby given custody of the child, Dawn Michelle. All costs so far incurred to be paid by plaintiff-appellee.
Reversed.
On Application for Rehearing.
En Banc. Rehearing denied.