MILLER, Judge.
Mr. and Mrs. Floyd Hollie, maternal grandparents, filed this habeas corpus proceeding seeking custody of their three year old grandchild Melissa Kay Simon, then in the custody of her father, Mr. E. J. Simon, Jr. The trial court granted custody to Mrs. Madge Hollie, one of the maternal grandparents, from which judgment the father has appealed. We affirm.
Defendant-appellant was married to Eula Roxene Simon, born Hollie, in 1966. The young married couple made their home with the Floyd Hollies near Starks, Louisiana. Melissa was born in March of 1967.
Melissa’s mother, Roxene, died April 16, 1968, as a result of injuries suffered in an automobile accident. At that time the family was living in the Hollie home. Melissa remained m the Hollie home until February 10, 1970 when she was removed by her father and taken to his parents home near Starks.
Defendant appellant E. J. Simon, Jr. lived in the Hollie home most of the time following the death of his wife. Occasionally he visited in his parent’s home, or spent a few nights visiting others or out of town. On February 10, 1970, he moved to his parent’s home and took the child with him because the Hollies complained about his drinking in their home during a period of mourning for Mrs. Hollie’s sister. Defendant stated to Dr. Barclay Funk, psychiatrist, who examined him at his request, that he removed the child because the Hollies wanted to adopt his child.
This habeas corpus proceeding was filed February 16. After several days of trial and the necessary delays granted attorneys to file briefs, the trial court assigned written reasons supporting the award of custody to Mrs. Madge Hollie. The trial court found “the evidence overwhelming that the father is unfit and has forfeited his parental right. The witnesses presented by plaintiffs on this point were most convincing and the court is satisfied that this father is entirely an unsuitable person for the care of a three year old girl (or a child of any other age).”
Melissa was returned to Mrs. Madge Hollie within seven weeks from the time her father removed her from the only home this child had known.
Plaintiffs presented numerous witnesses to support their contention that the father was unfit. Much of this testimony was discredited, but it was established to some degree at least, that defendant has consistently exhibited a criminal behavior pattern, a habit of drinking intoxicants to excess, a habit of using vile and offensive language, an inability or refusal to maintain steady employment, and a depressive social maladjustment.
This 21 year old father readily admitted the error in his ways, but contended that he had reformed about a year earlier. The trial judge did not accept this contention and there is much support for the conclusion that defendant appellant had not reformed. There is no manifest error in the finding that the father is unfit.
In child custody matters, perhaps more than in any other type litigation, great weight is assigned to the factual findings of the trial judge. By observing the demeanor of each witness in the courtroom, he is in a far superior position to judge their credibility and sincerity. Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955) ; LeBlanc, 194 So.2d 122 (La.App. 3d Cir. 1967); Duplantis v. Bueto, 186 So.2d 424 (La.App. 1 Cir. 1966); Craft v. Craft, 184 So.2d 758 (La.App. 3d Cir. 1966).
Alternatively, defendant appellant contended that the record does not support the finding that Mrs. Hollie can provide a good home and environment which would serve the best interest and welfare of Melissa. The trial court acknowledged that the Hollie home “had their difficulties in the past.” *298 Nevertheless, the trial court was impressed, as we are, that this is the home defendant himself selected for his own home and to raise his child. It was undisputed that, until February, 1970, defendant did not live with his parents. The reason was not made entirely clear.
To show the unfitness of the Hollie home, defendant produced evidence to establish that Mrs. Hollie had misused $2,970 of Melissa’s money (received in settlement of the claim for her mother’s death), that Mr. Hollie was on probation on a 1965 theft charge, that the Hollie’s 17 year old son was a 7th grade school drop-out, that a young lady who was raised in their home had two illegitimate children (one in 1964 and one in 1966), that relatives used the Hollie home for illicit purposes, that the Hollies do not have sufficient financial resources, that Mr. Hollie is disabled, and that the Hollies are not a church going family.
Each of defendant’s attacks was met with an explanation which softened the impact of the charge. The trial court specifically noted that the child’s settlement money had been depleted by the father and by Mrs. Hollie, “probably due to their lack of understanding of proper legal procedures.” The court ordered the child’s money placed in an account subject to withdrawal only upon court order.
The testimony of defendant’s witnesses made the trial court’s decision on this phase of the case difficult. Nevertheless, it was found that the best interest and welfare of the child would be served by placing her in the custody of the grandmother, Mrs. Madge Hollie. Again, we do not find manifest error in this decision.
A child may be removed from his natural parent (s) and placed with some third party in the event that the welfare of the child demands such a change. State ex rel. Paul et al. v. Peniston, 235 La. 579, 105 So.2d 228 (1958); State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8 (1955); Shilling v. Doyle, 218 So.2d 72 (La.App. 2d Cir. 1969).
The judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellant.
Affirmed.