285 So.2d 583 (1973)
Cheryl GERVAIS, wife of Robert BORRAS
v.
Dorothy NEW, wife of and Sherman J. FALGOUST.
No. 5463.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
Rehearing Denied December 10, 1973.
*584 Loyola Law School Clinic, Alvin A. Le Blanc, Jr. (Student-Practitioner), Arthur A. Lemann, III, New Orleans (Supervising Atty.), for appellant.
Everette F. Gauthreaux, Gretna, for appellees.
Before SAMUEL, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
This is a child custody contest between the mother and the foster parents.
Mrs. Cheryl Borras, the mother of the minor, Patrick Kellard Harmon, commenced these proceedings by obtaining issuance of a writ of habeas corpus, which commanded Mr. and Mrs. Sherman J. Falgoust to show the authority by which they held custody of the child. The Falgousts' answer recited the circumstances under which the mother had turned the child over to them and further urged that because the mother was unfit, the court should grant them legal custody.
At the trial on the merits, the court refused to hear evidence as to the fitness of the mother and rendered judgment restoring the child to her custody. However, the trial court ordered a new trial and, after receiving the previously rejected evidence, awarded permanent custody of the child to the Falgousts and dismissed Mrs. Borras' action.[1]
In this appeal by Mrs. Borras, the principal issues are the jurisdiction of the court, the procedural correctness of the order granting the new trial, and the correctness of the finding that the mother was unfit.
*585 When Mrs. Borras married on October 19, 1966, she was only 16 years of age. She and her husband lived together only four days, but at the time of trial she had never been judicially separated or divorced. Shortly after the separation, Mrs. Borras and Jimmie Harmon began to live together. She bore four children during this relationship, the fourth child (whose custody is at issue in this case) being born on May 18, 1971. About the time this child was born, Harmon was arrested and at the time of trial was serving a prison sentence.
Mrs. Borras then turned over the care of each of the four children to separate parties. In June, 1971 the Falgousts, who are not related to Mrs. Borras or to her husband, took over the care of Patrick, and Mrs. Borras signed a notarial instrument entitled "Surrender and Abandonment by Mother of Illegitimate Child."
On October 6, 1971 the Falgousts filed a petition to adopt Patrick. In late October Mrs. Borras manifested her intention to regain physical custody of her children and accordingly opposed the adoption, as did her legal husband. The juvenile court in Jefferson Parish denied the petition for adoption. Thereafter, Mrs. Borras filed this suit in the district court in Jefferson Parish.

JURISDICTION
The Supreme Court has consistently held that a parent bringing a habeas corpus proceeding to obtain the custody of his children (whether legitimate or illegitimate) has a right superior to that of a third person with actual custody, unless there is a sound and compelling reason to deny the parent's right. See State ex rel. Rothrock v. Webber, 245 La. 901, 161 So. 2d 759 (1964), and the cases cited therein. Moreover, the court exercising general civil jurisdiction is the proper and exclusive tribunal to adjudicate such an action. State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163 (1947). When the welfare of the child requires, however, the superior custodial right of the parent must yield. The Supreme Court in numerous cases has rejected the parent's habeas corpus action if the evidence received by the district court indicated that restoring custody to the parent was not in the best interest of the child. See, for example, State ex rel. Harris v. McCall, 184 La. 1036, 168 So. 291 (1936); State ex rel. Munson v. Jackson, 210 La. 1, 26 So.2d 152 (1946); State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740 (1946).
However, citing Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972), Mrs. Borras contends that the district court lacked jurisdiction to determine whether or not there was a compelling reason to deny her parental right.
In the Griffith case the paternal grandfather instituted a custody suit in the district court, alleging that the children had been neglected and the mother was morally unfit. At the time suit was filed, the children's parents had been divorced by a judgment silent as to custody, and the grandfather had physical custody of the children. After the court rendered a default judgment granting the grandfather custody, the mother sought to regain custody by filing a habeas corpus action in the same court. At the judge's suggestion she also filed a motion for change of custody in the grandfather's suit. After trial of the consolidated cases, the judge maintained custody with the grandfather and dismissed the writ of habeas corpus.
Holding that the suit by the grandfather was in fact an attempt by a person other than a parent to declare the children neglected, and that only the State could institute such a proceeding and then only in the juvenile court, the Supreme Court annulled the judgment which had granted the grandfather custody on the basis that the district court lacked jurisdiction to adjudicate the action instituted by him. In the companion suit, however, the court held that the only jurisdiction for the habeas corpus action by the mother was in the district court and remanded that case for a *586 determination of the custody of the children on the habeas corpus application.
The Griffith decision did not expressly state whether the district court possessed jurisdiction to adjudicate the issue of the mother's fitness in the habeas corpus proceeding on the remand. Since the district court had already dismissed the habeas corpus proceeding after hearing evidence on the mother's fitness, Mrs. Borras now argues that the Griffith case implicitly overruled the prior jurisprudence which allowed the district court to adjudicate that issue. In effect she argues that the issue of her fitness can only be raised in the juvenile court and that the district court is obliged to recognize her parental right without regard to the issue of her fitness.
We disagree. In analyzing the Griffith decision, we distinguish between the jurisdiction of the grandfather's custody suit (which the opinion primarily discussed) and that of the mother's habeas corpus action. The Griffith habeas corpus suit on remand is identical in posture to the present case, namely, an action by a parent against a non-parent exercising physical custody. The Supreme Court ruled that the district court had jurisdiction to "determine in the hearing on the application for habeas corpus the custody of the children".
Although the district court in the Griffith case had already ruled on the mother's fitness and dismissed her habeas corpus action, the remand was necessary because the district court in determining whether the mother was entitled to regain custody had been confronted with its prior default judgment in the consolidated case. Possibly, the district court imposed a stricter burden of proof on the mother because of this existing custody decree. When the Supreme Court annulled the custody judgments and dismissed the grandfather's suit, the habeas corpus action was the only viable proceeding remaining. The Supreme Court thus ordered the remand to determine "the custody of the children and not the change of custody of the children since there has never been a legal award of custody." (Emphasis quoted, 269 So.2d p. 223)
Inasmuch as the findings of the trial judge in a custody case are accorded great weight, the Supreme Court apparently remanded the habeas corpus action in order to allow the trial judge to redetermine these findings without regard to the invalid default judgment and to apply to his findings the law applicable to a determination of custody rather than change of custody. Indeed, if the mother's fitness were not an issue to be adjudicated on remand, the Supreme Court could have simply rendered judgment recognizing her parental right.
We therefore conclude that the Griffith case has not overruled the prior jurisprudence in which district courts have exercised jurisdiction in a parent's habeas corpus action to decide the issue of the parent's fitness and have refused to return the child to the parent found to be unfit. We reject the mother's argument that the district court is obliged to return custody to her, regardless of her fitness. There is no absolute requirement that the district court, in the mother's habeas corpus action against foster parents, must turn the child over to the mother, regardless of her fitness and solely because of the biological fact of her motherhood. Such an absolute requirement would be most unreasonable and certainly not in the best interest of the child.
Furthermore, while Act 111 of 1956 divested district courts of jurisdiction over "neglected" children, the last paragraph of R.S. 13:1570[2] preserved to the district *587 courts the right to decide custody in habeas corpus actions such as the present one.
The judgment in the present case, however, awarded the Falgousts "permanent custody" of the child. While the trial judge apparently meant to simply continue custody in the Falgousts and to give them legal authority over the child, our approval of the use of the word "permanent" could be misconstrued. We do not wish to imply that we now either preclude or approve a cause of action which may be asserted in the future by the mother or by any other party. Future actions are not presently before us. We therefore amend the trial court judgment so as to eliminate the word "permanent" therefrom.

PROCEDURE
Mrs. Borras next contends that the trial judge erred in granting defendants' motion for a new trial without affording her the notice and the contradictory hearing required by C.C.P. art. 1971 and 1976, which read as follows:
"A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues." C.C.P. art. 1971.
"Notice of the motion for new trial and of the time and place assigned for hearing thereon must be served upon the opposing party as provided by Article 1314." C.C.P. art. 1976.
When this objection was raised in the trial court, the judge stated that after researching the evidence question, he in effect granted a new trial on his own motion, but used the vehicle of the motion which the Falgousts has filed.
Inasmuch as a new trial may be granted by the court on its own motion without a contradictory hearing, the court may in the same manner grant a new trial on the motion of a party, if convinced by the motion that the party is entitled thereto. Constitutional due process does not require a contradictory hearing on a motion for a new trial. Sonnier v. Liberty Mutual Ins. Co., 258 La. 813, 248 So.2d 299 (1971). Moreover, if the order applied for by the motion is one to which the mover is clearly entitled without supporting proof, the court may grant the motion ex parte. C.C.P. art. 963.

MERITS
At the time that Mrs. Borras turned the child over to the Falgousts, she was living in an apartment with her sister and brother-in-law. She and her sister worked at night as "go-go" dancers.
The lady who undertook the care of the second child described Mrs. Borras' residence as "a wreck" when she picked up the child. When on the next day she was to take Mrs. Borras to a lawyer's office, she found the sister naked and Mrs. Borras sleeping in the same clothes she had worn the previous day. The lady testified further that Mrs. Borras said she gave the children away because they would otherwise turn out to be prostitutes and dope addicts.
The four people (two couples), who occupied the two other apartments in the same building, testified that five or six men lived at various times in the Borras apartment; that Mrs. Borras once told them "she had turned a trick for $25" the night before; that Mrs. Borras admitted she was taking narcotics and showed them the marks on her arm; that Mrs. Borras was very open about having affairs with various men and also stated she had an affair with her sister's husband; and that Mrs. Borras did not properly feed or otherwise care for the children before she gave them away. Each of the husbands testified that he had been invited by Mrs. Borras to participate in illicit affairs. Additionally, a friend of one couple testified that he had been invited over one evening *588 by Mrs. Borras' sister and had watched Mrs. Borras and her sister's husband remove their clothes and get into bed in the adjoining room.
These witnesses described the apartment as the "shotgut" type, in which one could see from room to room, and stated that the children slept on the floor on mattresses or blankets.
The Falgousts testified that Mrs. Borras never visited or even called about the child from the time she surrendered him in May until the time she opposed the adoption about November 1.
Mrs. Borras admitted her illicit relationship with Harmon, her work as a "go-go" dancer, and her use of heroin about four times, all of which were prior to her marriage to Borras. However, she denied any other illicit relationships (except with Borras before their marriage) and denied the facts asserted by the Falgousts' witnesses.
As to her giving up the children, Mrs. Borras explained that she had undergone surgery right after Patrick's birth and that, because she was in ill health and Harmon was in the penitentiary, she placed the children temporarily in other homes. She stated, however, that after she returned to health, she immediately regained custody of her children, except for Patrick, who the Falgousts refused to surrender.
Mrs. Borras further testified that at the time of trial she was not working, spent every day and night with her children, attended church with them regularly, and intended to marry Harmon upon his release from prison.
By rendering judgment against Mrs. Borras, the trial judge apparently resolved the conflicting testimony about her behavior against her. The findings of a trial judge are entitled to great weight, especially in cases involving the resolution of conflicting testimony and the determination of credibility of witness. Furthermore, a child custody case is one in which the greatest weight should be accorded the trial judge's findings.
After reviewing the record in the present case, we find no manifest error in the trial judge's acceptance of the testimony presented by the Falgousts and their witnesses and his rejection of the conflicting evidence presented by Mrs. Borras.
Finally, Mrs. Borras contends that all of the adverse testimony concerned her behavior six months or more prior to trial and that in view of her present reformed behavior, she should not be condemned for past misconduct. She cites Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), in support of this position.
Past misconduct forms an important consideration in determining the present suitability of a parent seeking child custody. Nevertheless, the primary consideration in any custody award is the best interest of the child. In the Fulco case the court apparently determined that the mother had reformed and that awarding custody to the reformed mother was in the child's best interest. In the present case the trial judge determined that awarding custody to the allegedly reformed mother was not in the child's best interest. Each case must be considered on its own facts. We find no error in the trial judge's determination in this case.
The judgment of the trial court is accordingly amended to eliminate the word "permanent" from the award of custody, and as amended, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] Mrs. Borras' husband interevened in the new trial and urged that the Falgousts be awarded custody.
[2] The last paragraph of R.S. 13:1570 reads:

"Nothing contained in R.S. 13:1561 through 13:1592 shall deprive other courts of the right to determine the custody of children upon writs of habeas corpus, or to determine the custody of children when such custody is incidental to the determination of cases pending in such other courts."